

1   McCrea Martin Allison, Ltd.
    Charles H. McCrea, Jr. (#104)
2   Anne Marie Doucette (#7792)
    3191 East Warm Springs Road
3   Longford Plaza East, Building 13
    Las Vegas, Nevada 89120-3147
4   Tel        (702) 933-4444
5   Fax        (702) 933-4445

6   *Attorneys for Defendants*

7

8

9                    **UNITED STATES DISTRICT COURT**

10                       **DISTRICT OF NEVADA**

11  SHUFFLE MASTER, INC.,              Case No.  CV-S-04-0980-JCM-PAL

12              Plaintiff,

13  v.                                 **OPPOSITION TO PLAINTIFF'S**
                                       **MOTION FOR SUMMARY JUDGMENT**
14                                     **OF INFRINGEMENT**

15  YEHIA   AWADA;   and   GAMING
    ENTERTAINMENT, INC.,
16

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

*(left margin, vertical)* McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

**27**

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................. 2

II.  LR 56-1 STATEMENT OF FACTS WHICH ARE OR ARE NOT GENUINELY IN
     ISSUE ........................................................................................ 3

III. LEGAL ARGUMENT ..................................................................... 4

     A.   LEGAL STANDARD .............................................................. 4

     B.   SHUFFLE MASTER HAS FAILED TO DEMONSTRATE THE
          ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT. .................... 5

          1.   The Papers Submitted by Shuffle Master Do Not Establish a *Prima Facie*
               Absence of Disputed Issues of Fact. ............................................5

               a.   Shuffle Master Fails to Prove the Legal Standard of Literal
                    Infringement. ................................................................. 5

          2.   Shuffle Master's Contentions Are Contradicted By Awada's Evidence.   9

               a.   The Claim Language Is Indefinite. ...................................... 9

               b.   The Listed Inventors Are Not the True Inventors. ................. 10

     C.   SHUFFLE MASTER'S REQUEST FOR AN *AD HOC* CLAIM
          CONSTRUCTION IS PREMATURE AND IMPROPER. .......................... 11

          1.   Claim Construction Should Be Delayed and a *Markman* Hearing
               Should Be Held................................................................11

          2.   Shuffle Master Fails to Properly Construe the Claims At Issue Because It
               Fails to Define "A Person of Ordinary Skill in the Art".....................13

     D.   SHUFFLE MASTER'S MOTION SHOULD ALSO BE DENIED UNDER
          FED. R. CIV. P. 56(f). ........................................................ 15

IV.  CONCLUSION ............................................................................. 16

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

i

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 256 (1986) ......................................................................................... 4

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*
262 F.3d 1258, 1268 (Fed. Cir. 2001) ..................................................................... 13

*Biovail Corp. Intn'l v. Andrx Pharms., Inc.*
239 F.3d 1297, 1300 (Fed. Cir. 2001) ..................................................................... 13

*Celotex Corp. v. Catrett*
477 U.S. 317, 323 (1986) ......................................................................................... 4

*Consolidated Electric Co. v. United States*
355 F.2d 437 (9th Cir. 1966) .................................................................................... 4

*County of Tuolumne v. Sonora Cmty. Hosp.*
236 F.3d 1148, 1154 (9th Cir. 2001) ........................................................................ 4

*Custom Accessories, Inc. v. Jeffery-Allan Industries, Inc.*
807 F.2d 955, 962-63 ............................................................................................... 14

*Ethicon Endro-Surgery Inc. v. U.S. Surgical Corp.*
93 F.3d 1572 (Fed. Cir. 1996) ................................................................................. 12

*Exxon Research & Eng'g Co. v. United States*
265 F.3d 1371, 1375 (Fed. Cir. 2001) ...................................................................... 9

*Hoffman v. Babbitt Bros. Trading Co.*
203 F.2d 636, 637 n. 1 (9th Cir. 1953) .................................................................... 4

*Innovad v. Microsoft Corp.*
260 F.3d 1326, 1332 (Fed. Cir. 2001) ..................................................................... 12

*Interactive Gift Express, Inc. v. Compuserve, Inc.*
231 F.3d 859, 864-65 (Fed. Cir. 2000) ................................................................... 12

*Interactive Gift Express, Inc. v. Compuserve, Inc.*
56 F.3d 1323 (Fed. Cir. 2001) ................................................................................. 12

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*
887 F.3d 1050, 1053 (Fed. Cir. 1989) ..................................................................... 12

*Leggett and Platt, Inc. v. Hickory Springs Manufacturing Co.*
285 F.3d 1353, 1357 (Fed. Cir. 2002) ..................................................................... 13

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

ii

*Lemelson v. United States\*
52 F.2d 1538, 1551 (Fed. Cir. 1985)).............................................................................6

*London v. Carson Pirie Scott & Co.*
946 F.2d 1534, 1538 (Fed. Cir. 1991) ...........................................................................6

*Markman v. Westview Instruments, Inc.*
52 F.3d 967 (Fed. Cir. 1995) ..........................................................................3, 11, 13

*Masson v. New Yorker Magazine, Inc.*
501 U.S. 496, 520 (1991) ...............................................................................................4

*Moeller v. Ionetics, Inc.*
794 F.2d 653 (Fed. Cir. 1986) ......................................................................................14

*Nelson v. A.H. Robins Co.*
515 F. Supp. 623, 627 (N.D. Cal. 1981).......................................................................4

*Optical Coating Lab, Inc. v. Applied Vision, Ltd.*
1994 WL 361752 *5-6 (N.D. Cal. 1994)........................................................................14

*Pennwalt Corp. v. Durad-Wayland, Inc.*
833 F.2d 931, 935 (Fed. Cir. 1987) ..............................................................................6

*PerSeptive Biosystems v. Pharmacia Biotech*
225 F.3d 1315, 1317 (Fed. Cir. 2000). .......................................................................10

*Pharms. v. Hercon Labs. Corp.*
161 F.3d 709, 716-17 (Fed. Cir. 1998) ........................................................................13

*Robotic Vision Systems, Inc. v. View Engineering, Inc.*
189 F.3d 1370, 1374 (Fed. Cir. 1999) ...........................................................................5

*Solomon v. Kimberly Clark Corp.*
216 F.3d 1372, 1377 (Fed. Cir. 2000) .........................................................................10

*Southwall Techs., Inc. v. Cardinal IG Co.*
54 F.3d 1570, 1578 (Fed. Cir. 1995) ...........................................................................13

*T.W. Elec. Serv., Inc. v. Pacific Contractors Ass'n*
809 F.2d 626, 631 (9th Cir. 1987)................................................................................4

*Theotokatos v. Sara Lee Personal Prods.*
971 F. Supp. 332, 334-44 (N.D. Ill. 1997) ..................................................................15

*Vivid Techs, Inc. v. American Science & Engineering, Inc.*
200 F.3d 795, 809 (Fed Cir 1999) ..............................................................................15

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

*Wahpeton Canvas Co. v. Frontier, Inc.*
870 F.2d 1546, 1552 n. 9 (Fed. Cir. 1989) ........................................................................ 6

**STATUTES**

35 U.S.C. § 102(f) .......................................................................................................... 10

35 U.S.C. § 112 .............................................................................................................. 9

**RULES**

Fed. R. Civ. P. 56(c) ....................................................................................................... 4

Fed. R. Civ. P. 56(f) ................................................................................................. 3, 15

McCrea Martin Allison, Ltd.
Charles H. McCrea, Jr. (#104)
Anne Marie Doucette (#7792)
3191 East Warm Springs Road
Longford Plaza East, Building 13
Las Vegas, Nevada 89120-3147
Tel          (702) 933-4444
Fax          (702) 933-4445

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHUFFLE MASTER, INC., | Case No.  CV-S-04-0980-JCM-PAL |
| Plaintiff, | |
| v. | **OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT** |
| YEHIA   AWADA;   and   GAMING ENTERTAINMENT, INC., | |
| Defendants. | |

COME NOW, Defendants Yehia Awada and Gaming Entertainment, Inc. ("GEI", and collectively with Yehia Awada, "Awada"), by and through their counsel of record, McCrea Martin Allison Ltd., and hereby oppose Shuffle Master's Motion for Summary Judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

This Opposition is made and based upon the following Memorandum of Points and Authorities, the pleadings and papers on file herein, and any oral argument to be made at the hearing on this matter.

DATED this 7th day of February 2005.

McCREA MARTIN ALLISON, LTD.

By _____
Charles H. McCrea, Jr. (#104)
Anne Marie Doucette (#7792)
3191 East Warm Springs Road
Longford Plaza East, Building 13
Las Vegas, Nevada 89120-3147

*Attorneys for Defendants*

## MEMORANDUM OF POINTS AND AUTHORITES

### I.

### INTRODUCTION

Summary judgment of infringement in this case is improper. Shuffle Master's motion, filed before any significant discovery has taken place, should be denied because [1] the motion fails to demonstrate the absence of a genuine issue of material fact; [2] there are clearly genuine issues of material fact; and [3] the motion is premature.

Shuffle Master asserts that there is no genuine issue of material fact regarding infringement. In making this assertion, Shuffle Master fails to meet its burden of proof, failing to make even a *prima facie* showing of a lack of disputed issues of material fact.   Materials submitted by Awada show that there are numerous genuine issues of material fact that preclude summary judgment for Shuffle Master at this early stage. Furthermore, Shuffle Master's *ad hoc* interpretation of the claims is not only disputed but invites the Court to commit reversible error by prematurely interpreting the claims on a record that is woefully inadequate.

Because there are genuine issues of material fact, Shuffle Master's motion must be denied and this case should proceed in accordance with the Court's Scheduling Order. Alternatively, even

Page 2 of 16

if it were not apparent that factual issues exist at this early stage, summary judgment should, nevertheless, be denied under Fed. R. Civ. P. 56(f) to permit the parties to complete discovery and to allow the Court to conduct a *Markman* hearing.[1]

## II.

## LR 56-1 STATEMENT OF FACTS
## WHICH ARE OR ARE NOT GENUINELY IN ISSUE

The words in the '759 Patent and the rules of the game *3-5-7 Poker* are not in dispute. Accordingly, Awada does not dispute the statements of uncontested facts identified by Shuffle Master in its Statement of Uncontested Facts in Support of Shuffle Master's Motion for Summary Judgment of Infringement as SF 1 through SF 7, SF 9 through SF 21, SF 23 through SF 34, SF 36 through SF 38 and SF 40.

Awada disputes SF 8 as a mischaracterization of the specifications in the '759 Patent referred to by Shuffle Master. The specifications speak for themselves.

Awada disputes SF 22 because *3-5-7 Poker* does not contemplate a "first" wager and a "second" wager. It requires a simultaneous wager on at least the first two games and optionally on all three games (except in Colorado where it requires a wager on any one, two or all three games simultaneously).

Awada disputes SF 35 because *3-5-7 Poker* does not contemplate a "third bet". It requires a simultaneous wager on at least the first two games and optionally on all three games (except in Colorado where it requires a wager on any one, two or all three games simultaneously).

Awada disputes SF 39 because *3-5-7 Poker* does not contemplate an "individual wager". It requires a simultaneous wager on at least the first two games and optionally on all three games (except in Colorado where it requires a wager on any one, two or all three games simultaneously).

/ / /

/ / /

---

[1] *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384 (1996). Awada is filing concurrently herewith a motion requesting the Court to schedule a *Markman* hearing. A copy of that motion is attached hereto as Exhibit A.

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

# III.

# LEGAL ARGUMENT

## A.   LEGAL STANDARD

Summary Judgment is a blunt weapon and a drastic remedy that should be employed only after careful consideration of all the salient issues leads to the conclusion that no interpretation of the evidence could support the non-movants' claims.  *Hoffman v. Babbitt Bros. Trading Co.*, 203 F.2d 636, 637 n. 1 (9th Cir. 1953).  It should be used with caution so as not to serve as a substitute for a trial on the merits.  *Nelson v. A.H. Robins Co.*, 515 F. Supp. 623, 627 (N.D. Cal. 1981).   Thus, unless the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law, summary judgment is inappropriate.  Fed. R. Civ. P. 56(c); *see also Consolidated Electric Co. v. United States*, 355 F.2d 437 (9th Cir. 1966).

In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991);   *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).   As the movant, Shuffle Master bears the initial burden of establishing the absence of any genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court finds that Shuffle Master has failed to meet its initial burden, Shuffle Master's motion cannot be granted, and the Court need conduct no further inquiry.  If the Court finds Shuffle Master has made a *prima facie* showing of the absence of a genuine issue of material fact, then Awada bears the burden to set forth specific facts showing that there is a genuine issue for trial.  *T.W. Elec. Serv., Inc. v. Pacific Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Thus, if there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.  *Id.*

/ / /

/ / /

/ / /

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

**B.      SHUFFLE MASTER HAS FAILED TO DEMONSTRATE THE ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT.**

Shuffle Master has failed in its burden to make a *prima facie* showing of the absence of a genuine issue of material fact.  Shuffle Master's arguments and supporting declarations, fail to prove, as a matter of law, that Awada has infringed even one claim of the '759 Patent.  Shuffle Master's claim construction is *ad hoc* and improper.  Accordingly, summary judgment should be denied before even considering evidence submitted by Awada.

If, however, this Court accepts Shuffle Master's interpretation of the claims, Shuffle Master's motion should be denied based upon the declaration of Mr. Awada[2] and other evidence submitted in support of Awada's opposition.  That evidence raises doubt as to the validity and enforceability of the '759 Patent and calls into question whether infringement is even possible.  Awada, therefore, has met his burden of raising a genuine issue of material fact rendering summary judgment inappropriate.

**1.      The Papers Submitted by Shuffle Master Do Not Establish a *Prima Facie* Absence of Disputed Issues of Fact.**

The majority of Shuffle Master's argument is devoted to attempting to convince the Court that it can determine at this early stage that Awada's game *3-5-7 Poker* infringes the '759 Patent as a matter of law.  Shuffle Master's proposed construction of the claims at issue must be rejected. Shuffle Master bases its argument upon the declarations of counsel and Roger Snow.  These declarations, however, fail to show a lack of disputed issues regarding Awada's alleged infringement. Specifically, none of the declarations provide support to Shuffle Master's claim construction and infringement analysis.

**a.      Shuffle Master Fails to Prove the Legal Standard of Literal Infringement.**

Determination of patent infringement involves two steps:  (1) claim construction to determine the scope and meaning of the claims asserted to be infringed; and (2) a determination of whether the claim as interpreted covers the alleged infringer's product.  ***Robotic Vision Systems, Inc. v. View Engineering, Inc.***, 189 F.3d 1370, 1374 (Fed. Cir. 1999).    To establish infringement, all of the patented claims' elements must be found in the alleged infringer's product.  ***Pennwalt Corp. v.***

---

[2]  See Declaration of Yehia Awada attached as Exhibit B (hereafter "Awada Declaration").

*Durad-Wayland, Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987) (overruled on other grounds).  In other words, "each element of a claim is material and essential...and in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device."   *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991) (*quoting Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985)).  Thus, if any one or more limitations of a claim is missing from the accused device, there can be no infringement as a matter of law. *Id.* at 1539.  Additionally, if an accused device is found not to infringe an independent claim of the patented device, then, it must also be found not to infringe any claim dependent on the independent claim. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n. 9 (Fed. Cir. 1989) ("[o]ne who does not infringe an independent claim cannot infringe on a claim dependent on (and thus containing all the limitations of) that claim.").

Shuffle Master's motion is deficient in meeting the essential elements of the legal standard for infringement.   Specifically, Shuffle Master has failed to show that it is able to prove by a preponderance of the evidence that Awada literally infringed the patent-in-suit.  There are sufficient differences between the patent-in-suit and Awada's *3-5-7 Poker* game,[3] that *3-5-7 Poker* cannot, as a matter of law, be found to literally infringe Shuffle Master's patent.[4]

    i.    **_3-5-7 Poker_ Does Not Infringe Claim 1 Because _3-5-7 Poker_ Lacks Every Limitation of Claim 1**

Awada's *3-5-7 Poker* game lacks the necessary limitations of Claim 1[5] and therefore, cannot, as a matter of law, infringe the '759 Patent.  In his answers to Shuffle Master's interrogatories, Awada explained precisely why the game of *3-5-7 Poker* does not infringe Claim 1 of the '759 Patent:

---

[3]  *See, e.g.,* Awada Declaration, ¶ 12.

[4]  Shuffle Master does not allege infringement under the doctrine of equivalents.  Even assuming, arguendo, that infringement under the doctrine of equivalents was asserted, a finding of infringement is improper as *3-5-7 Poker* does not "perform substantially the same function in substantially the same way" as the '759 Patent. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).  Shuffle Master's failure to establish infringement, either literally or under the doctrine of equivalents, dictates that Awada cannot be found liable for direct or indirect infringement of the asserted claims of the '759 Patent.  Accordingly, summary judgment on direct and indirect infringement is inappropriate.

[5]  Claim 1 of the '759 Patent reads:

    A method of playing a wagering game, comprising:

    placing a first single part wager to participate in a casino three-card poker-type game;

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

The game *3-5-7 Poker* does not infringe claims 1 through 24 and 39 through 48 of the '759 Patent because:

All methods claimed therein involve "part" wagers. The term "part" implies something less than all and indicates that the game method contemplated by the '759 Patent requires a subsequent addition to the "part wager" before the game can be concluded. The game *3-5-7 Poker* requires a full wager (or wagers) to be made at the game outset and, once the wager(s) is (are) made, a player has no ability to add to any wager.

The game *3-5-7 Poker* does not infringe claims 1 through 20 of the '759 Patent because:

[1]        It does not involve a "part wager". The game *3-5-7 Poker* requires full wagers.

[2]        It does not involve "placing a first single part wager to participate in a casino three-card poker type game". Except in the state of Colorado, to participate in the game *3-5-7 Poker*, a player must place a full wager on each of the first two or all three games that are part of the game *3-5-7 Poker*. In the state of Colorado, a player must place a full wager on at least one of the games and may optionally place a full wager on any second game or all three games.

[3]        It does not involve "a dealer dealing a hand of three cards to each player". In the game *3-5-7 Poker*, the dealer deals three cards that are personal to each player and four community cards.

[4]        It does not involve "resolving each player's three card hand according to a predetermined hierarchy of poker hands". In the game *3-5-7 Poker*, the player is wagering that his hand will contain a predetermined combination of cards that will qualify the player to receive a predetermined payout based on a pay table.

Exhibit A-5 to Shuffle Master's Motion for Summary Judgment; *see also* Awada Declaration, ¶ 13.

*3-5-7 Poker* does not involve "part" wagers. Rather, 3-5-7 requires a full wager (or wagers) to be made at the game outset and, once the wager(s) is (arc) made, a player has no ability to add to any wager. Except in the state of Colorado, to participate in the game *3-5-7 Poker*, a player must place a full wager on each of the first two or all three games that are part of the game *3-5-7 Poker*. In the state of Colorado, to participate in the game *3-5-7 Poker*, a player must place a full wager on at least one of the games and may optionally place a full wager on any second game or all three games.

*3-5-7 Poker* also does not involve "a dealer dealing a hand of three cards to each player." In the game *3-5-7 Poker*, the dealer deals three cards that are personal to each player and four community cards.

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

a dealer dealing a hand consisting of three cards to each player who placed a first wager; and
resolving each player's three card hand according to a predetermined hierarchy of poker hands.

Finally, *3-5-7 Poker* does not involve "resolving each player's three card hand according to a predetermined hierarchy of poker hands." In *3-5-7 Poker*, the player is wagering that his hand will contain a predetermined combination of cards that will qualify the player to receive a predetermined payout based on a pay table.

*3-5-7 Poker* lacks, not just one, but all the necessary limitations of Claim 1. Accordingly, there can be no infringement as a matter of law.

### ii. *3-5-7 Poker* Does Not Literally Infringe Claims 2, 4 and 8 Because They Are All Dependent on Claim 1.

*3-5-7 Poker* cannot infringe Claims 2,[6] 4[7] or 8[8] because they are all dependent on Claim 1 and, thus, incorporate each and every one of the limitations of Claim 1. As *3-5-7 Poker* does not infringe Claim 1 because it lacks each and every one of the necessary limitations set forth in Claim 1, it, as a matter of law, cannot infringe Claims 2, 4 or 8.

### iii. *3-5-7 Poker* Does Not Infringe Claim 21.

*3-5-7 Poker* does not infringe Claim 21[9] because it lacks one or more of the necessary limitations set forth in Claim 21. Again, in his answers to Shuffle Master's interrogatories, Awada explained precisely why the game of *3-5-7 Poker* does not infringe Claim 1 of the '759 Patent:

---

[6]  Claim 2 of the '759 Patent reads:

> The method of claim 1, wherein a payout is made to the player on the first wager for one of a plurality of predetermined winning outcomes.

[7]  Claim 4 of the '759 Patent reads:

> The method of claim 2, wherein the hands are resolved according to a pay table that pays a proportional payout on the first bet for each predetermined winning outcome.

[8]  Claim 8 of the '759 Patent reads:

> The method of Claim 2 wherein the predetermined winning outcome is at least one pair.

[9]  Claim 21of the '759 Patent reads:

> A method of playing a live casino table card game with physical cards comprising:
>
> placing a single part wager to participate in a casino wagering three-card poker-type game;
> dealing a hand consisting of three cards to each player who placed a single part wager; and
> resolving each player's hand according to the rules of poker against a payout table providing payouts for predetermined ranks of poker-type hands;

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

1   The game *3-5-7 Poker* does not infringe claims 21 through 24 of the '759 Patent because:

2       [1]  It does not involve a "part wager". The game *3-5-7 Poker* requires full wagers.

3       [2]  It does not involve "placing a single part wager to participate in a casino wagering three-card poker-type game". Except in the state of Colorado, to participate in the game *3-5-7 Poker*, a player must place a full wager on each of the first two or all three games that are part of the game *3-5-7 Poker*. In the state of Colorado, a player must place a full wager on at least one of the games and may optionally place a full wager on any second game or all three games.

6       [3]  It does not involve "a dealer dealing a hand of three cards to each player". In the game *3-5-7 Poker*, the dealer deals three cards that are personal to each player and four community cards.

8   Exhibit A-5 to Shuffle Master's Motion for Summary Judgment; *see also* Awada Declaration, ¶ 13.

9       In contrast to Claim 21, *3-5-7 Poker* does not involve a "part wager". The game *3-5-7 Poker*

10  requires full wagers. Second, *3-5-7 Poker* does not involve "placing a single part wager to participate

11  in a casino wagering three-card poker-type game". Except in the state of Colorado, to participate in

12  the game *3-5-7 Poker*, a player must place a full wager on each of the first two or all three games that

13  are part of the game *3-5-7 Poker*. In the state of Colorado, a player must place a full wager on at least

14  one of the games and may optionally place a full wager on any second game or all three games.

15  Third, *3-5-7 Poker* does not involve "a dealer dealing a hand of three cards to each player". In the

16  game *3-5-7 Poker*, the dealer deals three cards that are personal to each player and four community

17  cards.

18      **2.**    **Shuffle Master's Contentions Are Contradicted By Awada's Evidence.**

19      Shuffle Master's arguments are insufficient to render summary judgment appropriate because

20  Awada has submitted evidence establishing that a genuine issue of material fact exists regarding the

21  validity and enforceability of the '759 patent. There is an issue of fact as to whether the claims are

22  too indefinite to be enforceable and whether the listed inventors are the true inventors.

23      **a.**    **The Claim Language Is Indefinite.**

24      The '759 Patent is indefinite pursuant to 35 U.S.C. § 112. The "definite" requirement of

25  section 112 requires that a "claim be amenable to construction." ***Exxon Research & Eng'g Co. v.***

26  ***United States***, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Specifically, to comply with Section 112, the

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

28  wherein at least some payouts proportional to the single part wager are available in resolving hands for obtaining a redetermined rank of a hand.

claim must (1) "set forth what 'the applicant regards as his invention;'" and (2) set forth the invention with "*sufficient particularity* and distinctiveness, i.e. the claim must be sufficiently 'definite.'" *Solomon v. Kimberly Clark Corp.*, 216 F.3d 1372, 1377 (Fed. Cir. 2000) (citations omitted). A claim is indefinite if the "claim is insolubly ambiguous, and no narrowing construction can properly be adapted. *Id.* Evidence presented by Awada adequately establishes that certain terms within the '759 Patent are, at minimum, not as precise as they could be. For example, terms uses in the claims of the '759 Patent, including "single part wager" and "part wager" indicates something less than a full wager. Awada Declaration, ¶ 12. The term, however, is not defined in the specifications. *Id.* The terms "single part wager" and "part wager" introduce ambiguity into the claims of the '759 Patent, and accordingly, raise a genuine issue of material fact as to the invalidity of the '759 Patent by reason of indefiniteness. *Id.*

**b.     The Listed Inventors Are Not the True Inventors.**

An issue of material fact also exists as to the invalidity of the '759 patent under 35 U.S.C. § 102(f) due to incorrect designation of the inventorship.[10] Wrongful designation of inventorship is established by a showing that the claims of inventorship were materially misrepresented to the Patent and Trademark Office. *PerSeptive Biosystems v. Pharmacia Biotech*, 225 F.3d 1315, 1317 (Fed. Cir. 2000).

---

[10]  In Awada's answers to Shuffle Master's interrogatories, he states:

*See* Shuffle Master's Objections and Responses to Defendants' First Interrogatories, Responses to Interrogatory Nos. 1, 2, 3, 4, 6 and 7, attached as Exhibit C hereto.

Facts supporting Defendants' contention that the '759 Patent is invalid or unenforceable include:

[1]     Defendants are informed and believe that neither Derek Webb nor Roger Snow invented the game methods claimed in the '759 Patent.

[2]     The game method of the game *3-5-7 Poker* was publicly disclosed at an industry tradeshow in Las Vegas, Nevada, on October 1, 2001, prior to the filing of the '759 Patent application. Defendants are informed and believe that the game *3-5-7 Poker* was demonstrated to Plaintiff at the tradeshow. At that time, the game *3-5-7 Poker* was the subject of U.S. Patent Application No. 01/917082. The patent for the game *3-5-7 Poker* was issued to defendant Yehia Awada on March 16, 2004 as U.S. Patent No. 6,705,943. By filing the '759 Patent application, Plaintiff attempted to copy, within the strictures of a patent application continuation, some of the elements of the game *3-5-7 Poker*.

[3]     Terms used in the claims of the '759 Patent, including "single part wager" and "part wager" are indefinite and would not be understood by someone skilled in the art. These terms are not defined in the specifications rendering the written description of the invention inadequate.

Exhibit A-5 to Shuffle Master's Motion for Summary Judgment, pp. 4-5; see also Awada Declaration at ¶ 12.

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

Here, there is evidence that some of the elements of the *3-5-7 Poker* are copied by the '759 Patent. The game method of the game *3-5-7 Poker* was publicly disclosed prior to the filing of the '759 Patent.[11] Specifically, GEI displayed *3-5-7 Poker* at the Global Gaming trade show in Las Vegas, Nevada, on October 1, 2001. *Id.* At that show, Mr. Awada discussed *3-5-7 Poker* with numerous Shuffle Master employees or representatives. *Id.* The employees or representatives observed the *3-5-7 Poker* in play and even took product literature describing the game. *Id.*

At the time of the trade show, the game *3-5-7 Poker* was the subject of U.S. Patent Application No. 01/917082. *Id.* The patent for the game *3-5-7 Poker* was issued to defendant Yehia Awada on March 16, 2004 as U.S. Patent No. 6,705,943. *Id.* The application for the '759 Patent was not filed until November 1, 2001.[12] Accordingly, there exists a genuine issue of material fact concerning inventorship of some of the elements of the '759 Patent.

## C. SHUFFLE MASTER'S REQUEST FOR AN *AD HOC* CLAIM CONSTRUCTION IS PREMATURE AND IMPROPER.[13]

### 1. Claim Construction Should Be Delayed and a *Markman* Hearing Should Be Held.

Claim construction is a substantive legal inquiry. As the Federal Circuit Court of Appeals has repeatedly held, the purpose of claim construction is to determine what the terms appearing in the claims would have meant to a person of ordinary skill in the art at the time the invention was made. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (claims are interpreted according to the understanding of a person of ordinary skill in the art at the time of the invention), *aff'd* 517 U.S. 370 (1996). A proper claim construction must also take both the specification and file

---

[11] *Id.*

[12] See Complaint attached hereto as Exhibit "D".

[13] In Shuffle Master's answers to Awada's interrogatories served December 22, 2004, Shuffle Master itself recognizes that the parties have much to do in completing discovery and complying with the Court's Scheduling Order before it can be assumed that the facts in this case have been fully developed. In answer to six of eight interrogatories, Shuffle Master states:

> Shuffle Master objects to this contention interrogatory as premature because information responsive to this interrogatory is the subject of ongoing discovery, investigation, and analysis, and, in part, may be the subject of expert analysis and testimony. Shuffle Master further objects to this contention interrogatory as premature because it seeks contentions that may be the subject of expert reports which are not due until April 15, 20054, under the Court's Scheduling Order.

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

history into account. *See Innovad v. Microsoft Corp.*, 260 F.3d 1326, 1332 (Fed. Cir. 2001) (the court must look at specification and relevant file history in order to properly construe claim terms). Courts are typically aided in this inquiry by the testimony (either in person or by affidavit) of those having knowledge of the relevant art at the time the application was filed. *See Markman*, 52 F.3d at 979 (holding that expert testimony may be used by the court during claim construction).

With such information, the court must apply a number of legal principles to determine what the claim terms mean. For example, the Court should not read limitations into the claims from the preferred embodiment, should be wary of claim constructions which do not read on preferred embodiments, and should not construe claim terms in isolation. *See, e.g., Ethicon Endro-Surgery Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572 (Fed. Cir. 1996) (court should not import limitations of the preferred embodiment into claims); *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 231 F.3d 859, 864-65 (Fed. Cir. 2000) (claim construction vacated where construction did not read on preferred embodiment), *withdrawn and substituted by, Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323 (Fed. Cir. 2001); *Markman*, 52 F.3d at 979 ("to ascertain the meaning of claims, we consider three sources: the claims, the specification, and the prosecution history"). Because claim construction is fraught with so many pitfalls, and is the source of the vast majority of reversals, courts typically address this matter after extensive briefing and after all disputed claim issues are fully joined. Frequently, courts are aided in this endeavor by expert testimony. By delaying consideration of issues related to claim construction, courts avoid construing claim terms that are not in dispute and avoid conducting a piecemeal claim construction that is more likely to result in error. Activity related to this issue typically culminates in a *Markman* Hearing where all the issues related to claim construction are considered.

In this case, there has been no opportunity to address or consider the various issues relating to claim interpretation or to provide the Court with expert testimony or briefing typically considered in claim construction. This would include, at a minimum, evidence of how a person of ordinary skill in the art in 2001 would have understood the disputed claim terms. It would also, at the Court's discretion, include testimony from experts to assist the Court in understanding the context of the claims and background of the invention of the '759 Patent.

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

The Court should follow the sensible approach of other courts, as recommended by the Federal Circuit, with respect to claim construction and consider this issue in accordance with a standard scheduling order that includes a briefing schedule and a *Markman* Hearing. Shuffle Master's request for summary judgment of infringement should therefore be denied as premature.

2.   **Shuffle Master Fails to Properly Construe the Claims At Issue Because It Fails to Define "A Person of Ordinary Skill in the Art".**

Claim construction requires the court to analyze the intrinsic evidence of the record – the claims and written description of the patent itself, and, if in evidence, the prosecution history. ***Biovail Corp. Intn'l v. Andrx Pharms., Inc.***, 239 F.3d 1297, 1300 (Fed. Cir. 2001).   In construing claims, the Court gives claim terms their ordinary meaning, ***as understood by a person of ordinary skill in the art***. ***Key Pharms. v. Hercon Labs. Corp.***, 161 F.3d 709, 716-17 (Fed. Cir. 1998) (emphasis added).   Terms in a claim are not given their ordinary meaning, however, where it appears from the patent and file history that the terms were used differently by the patentee, ***Southwall Techs., Inc. v. Cardinal IG Co.***, 54 F.3d 1570, 1578 (Fed. Cir. 1995), or when the ordinary meaning of the term "deprives the claim of clarity such that there is 'no means by which the scope of the claim may be ascertained from the language used.'"   ***Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.***, 262 F.3d 1258, 1268 (Fed. Cir. 2001).

The relevant inquiry is how a person of ordinary skill in the art would understand the claim terms at the time of the invention. *See* ***Markman***, 52 F.3d at 986.   A person of ordinary skill in the arts is a hypothetical construct.   ***Leggett and Platt, Inc. v. Hickory Springs Manufacturing Co.***, 285 F.3d 1353, 1357 (Fed. Cir. 2002).

Many factors contribute to the hypothetical person, including: the educational levels of the inventor and those who worked in the relevant industry, the sophistication of the technology involved in the invention, the various prior art approaches employed regarding the problem allegedly solved by the invention, the types of problems encountered in the art, and the rapidity with which innovations are made in the field. *See* ***Custom Accessories, Inc. v. Jeffery-Allan Industries, Inc.***, 807 F.2d 955, 962-63.

Shuffle Master's claim construction is improper.  At minimum, Shuffle Master fails to inform the Court of the proper standard to interpret the claims.  Shuffle Master's comments regarding its construction of claims are erroneous in that Shuffle Master fails to construe the claims from the vantage point of a person of ordinary skill in the art at the time the invention was made.   Shuffle Master's motion is silent regarding the knowledge of a person of ordinary skill in the art and focuses instead on its own subjective interpretation of the meaning of the claims in current terms.  Failure to properly interpret the claims according to a person of ordinary skill in the art at the time of the invention is reversible error. *See **Moeller v. Ionetics, Inc.**, 794 F.2d 653 (Fed. Cir. 1986)* (summary judgment reversed for failure to allow expert testimony showing what claims would have meant to one of ordinary skill in the art), *overruled on other grounds by, **Markman**, 52 F.3d 967; **Optical Coating Lab, Inc. v. Applied Vision, Ltd.**, 1994 WL 361752 *5-6 (N.D. Cal. 1994)* (reversible error not to consider expert testimony on the meaning of ambiguous claim language to one of ordinary skill in the art).

The '759 Patent application was filed in 2001.  There is no evidence in Shuffle Master's motion or supporting papers to indicate that Shuffle Master was interpreting claims according to what a person of ordinary skill in the art in 2001, as opposed to 2005, would have understood the claim to mean.  No doubt, Shuffle Master will argue in their reply that their contention today of "plain and ordinary meaning" of selected terms of the claims is no different from that of a person of ordinary skill in the art in 2001.  But, even if coincidentally the same, there is no evidence in Shuffle Master's motion or supporting papers to support that argument.

Furthermore, Shuffle Master's assertion of "plain and ordinary meaning" is disputed.  Focusing on the description of the first element in Claim 1 of the '759 Patent, Shuffle Master argues that the term "single part wager" must be interpreted to mean that "a player must place at least a first, individual wager to play a three-card poker type game..." (Shuffle Master's motion, at 10:2-6).  Such a meaning, however, is far from "plain and ordinary".[14]  First, the terms "single part wager" and "part wager" are indefinite and would not be understood by someone skilled in the art.  *Id.*  Moreover, these terms are not defined in the specifications.  The issue of the proper construction of this claim,

---

[14] See Awada Declaration, ¶ 12.

MCCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

accordingly, should be left for an adequate briefing of all disputed claim terms within the full context of the claim and under a proper claim interpretation standard.

Viewing the facts in a light most favorable to Awada, genuine issues of fact exist as to proper claim construction. Accordingly, Shuffle Master's motion must be denied.

**D.    SHUFFLE MASTER'S MOTION SHOULD ALSO BE DENIED UNDER FED. R. CIV. P. 56(f).**

Pursuant to Fed. R. Civ. P. 56(f), a motion for summary judgment may be denied or stayed to allow discovery to take place if the opposing party cannot present countering affidavits or evidence for reasons stated. Rule 56(f) safeguards against too hasty a grant of summary judgment. *Vivid Techs, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 809 (Fed Cir. 1999). Whether a Rule 56(f) request should be granted is typically evaluated in light of a number of factors including: (1) the length of pendency of the case prior to the request; (2) whether the party could have anticipated the need for discovery; (3) the degree and nature of the discovery already taken; and (4) whether the requested information was inaccessible to the requesting party. *See Theotokatos v. Sara Lee Personal Prods.*, 971 F. Supp. 332, 334-44 (N.D. Ill. 1997) (mere three month delay and fact that third-party defendant was waiting for court to rule on its motion to dismiss before commencing discovery was sufficient showing that the party had not been dilatory in pursuing discovery).

Considering the factors above, a Rule 56(f) request by Awada should be granted.[15] Discovery in this matter has only recently commenced. A large amount of evidence necessary to show invalidity and unenforceability of the '759 Patent is inaccessible to Awada except through forma discovery. Awada, accordingly, requests discovery pursuant to Rule 56(f). In the short term, the discovery necessary and relevant to Awada's opposition to Shuffle Master's motion includes taking the depositions[16] of Roger Snow and Derek Webb, the inventors listed on the '759 Patent, and answers to additional interrogatories and requests for production to be propounded on Shuffle Master. Moreover, this Court should not construe the claims of the '759 Patent without the benefit of expert

---

[15]   Shuffle Master itself concedes that much discovery remains to be done. See Note 11, *supra*.

[16]   As of the date of this filing, no depositions have been taken in the case by either party. Awada has noticed the depositions of Roger Snow and Derek Webb for March 8 and 9, 2005, respectively.

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

testimony.  Under the current Scheduling Order, the parties will not even be identifying their experts until April 15, 2005.

The most sensible approach to this case at this juncture is to deny this motion without prejudice and to allow the parties to complete discovery – including expert discovery – in accordance with the terms of the Scheduling Order and then to set a *Markman* hearing where the claims at issue can be properly interpreted by the Court with the benefit of all the evidence available to the parties including the testimony of experts.  To do otherwise simply invites reversible error.

## IV.

## CONCLUSION

For the foregoing reasons, Shuffle Master's Motion for Summary Judgment of Infringement must be denied.

DATED this \_\_\_\_ day of February 2005.

McCREA MARTIN ALLISON, LTD.

By _____
Charles H. McCrea, Jr. (#104)
Anne Marie Doucette (#7792)
3191 East Warm Springs Road
Longford Plaza East, Building 13
Las Vegas, Nevada 89120-3147

*Attorneys for Defendants*

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _7th_ day of February, 2005, I caused to be served a true and correct copy of the foregoing **Opposition to Plaintiff's Motion for Summary Judgment of Infringement** on the following person(s) by the following method(s) pursuant to NRCP 5(b):

J. Colby Williams (#5549)
CAMPBELL & WILLIAMS
700 South Seventh Street
Las Vegas, Nevada 89101

Paul D. Collier, Esq.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601

*Attorneys for Shuffle Master, Inc.*

*Attorneys for Shuffle Master, Inc.*

☒ by placing a true and correct copy of the above-mentioned document(s) in a sealed envelope, first class postage fully pre-paid, in the United States mail.

☐ by facsimile transmission only, pursuant to the amendment to the Eighth Judicial District Court Rule 7.26, by faxing a true and correct copy of the same to each at the facsimile number(s) indicated below.

_____
An employee of MCCREA MARTIN ALLISON, LTD.

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

McCREA MARTIN ALLISON, LTD.
Charles H. McCrea, Jr. (#104)
Anne Marie Doucette (#7792)
3191 East Warm Springs Road
Longford Plaza East, Building 13
Las Vegas, Nevada 89120

Tel.   (702) 933-4444
Fax    (702) 933-4445

*Attorneys for Defendants YEHIA AWADA
And GAMING ENTERTAINMENT, INC.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SHUFFLE MASTER, INC., | Case No.  CV-S-04-0980-JCM-PAL |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION FOR ORDER SCHEDULING A MARKMAN HEARING** |
| YEHIA   AWADA;   and   GAMING ENTERTAINMENT, INC., | |
| Defendants. | |

COME NOW, Defendants Yehia Awada and Gaming Entertainment, Inc., by and through their counsel of record, McCrea Martin Allison Ltd., and hereby move the Court for entry of an order scheduling a hearing ("Markman Hearing") for the purpose of construing and interpreting the claims in U.S. Patent No. 6,698,759 B2 that are at issue in this action.

////
////
////
////
////
////

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

This request is made pursuant to ***Markman v. Westview Instruments, Inc.***, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996), the following Points and Authorities, the pleadings and documents on file herein, and any oral argument this Court may allow.

DATED this ⁷ᵗʰ day of February 2005.

McCREA MARTIN ALLISON, LTD.

By _____
Charles H. McCrea, Jr. (#104)
Anne Marie Doucette (#7792)
3191 East Warm Springs Road
Longford Plaza East, Building 13
Las Vegas, Nevada 89120

*Attorneys for Defendants YEHIA AWADA and GAMING ENTERTAINMENT, INC.*

## POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Plaintiff Shuffle Master, Inc. ("Shuffle Master") alleges that defendants Yehia Awada and Gaming Entertainment, Inc. ("GEI", and collectively with Yehia Awada, "Awada") infringe its U.S. Patent No. 6,698,759 (the "'759 patent") through the promotion and sale of the casino table game known as 3-5-7 Poker. By this motion, Awada requests the Court to conduct a Markman Hearing after the close of all discovery for the purpose of interpreting the patent claims at issue in this case. Such a procedure will facilitate the economic, expeditious and just resolution of this matter.

### II.

### BACKGROUND

Shuffle Master alleges that Awada has infringed one or more claims of the '759 Patent. In its Complaint, Shuffle Master asserts that Awada is infringing, inducing the infringement of, and/or

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

contributing to the infringement of the '759 Patent by making, using, selling, offering to sell, advertising, leasing, offering to lease, and/or marketing 3-5-7 Poker in competition with plaintiff's 3-card poker game. Central to the issue of infringement is a determination of the scope and breadth of the claims of the '759 Patent. In determining the scope and breadth of the '759 Patent, the Court must interpret the claims at issue.

### III.

### ARGUMENT

The claims of a patent define the scope of the patent grant. 35 U.S.C. § 112 ("[t]he specification [of a patent] shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."). Claim construction is an issue of law within the exclusive province of the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Markman Hearings, or claim construction hearings, are common in patent infringement actions and are used to construe the claims of a patent.

A district court has complete discretion on how, when and if a Markman Hearing will be held. *Ballard Med. Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001); *see also Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) (as long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way it deems best); *and Thomson S.A. v. Quixote Corp.*, 166 F.3d 1172, 1174 (Fed. Cir. 1999). There are generally three broad options in terms of the evidentiary juncture at which the issue of claim construction can be resolved: (1) on the paper record; (2) at a Markman Hearing prior to trial; or (3) after all the evidence has been presented at trial, but before instructing the jury. *Elf Atochem N. Am. V. Libbey-Ownes-Ford Co.*, 894 F. Supp. 844, 850 (D. Del. 1995).

To effectuate the inherent benefits of a claim construction hearing, the hearing should be conducted prior to trial abut after the close of discovery. *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 911 F. Supp. 76, 79 (E.D. N.Y. 1996). Courts should be reluctant to hold such hearings prior to the close of discovery. *See, e.g., Sofamor Danek*, 74 F.3d at 1221 (a trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art). Before interpreting the claims, the parties should have the opportunity to "fully develop" the case so that the court can evaluate the issues in the context of the entire dispute. *Id.*

In this case, a pre-trial hearing regarding claim construction following the close of discovery could be dispositive; but even if it is not dispositive, it will serve to clearly delineate those issues that remain to be tried. Construction of the claims prior to the close of discovery and without a developed record, however, would increase the likelihood of error or might necessitate a follow-up hearing requiring a duplication of effort and expense.

## VI.   CONCLUSION

For the forr   ing reasons, the Court should order a Markman Hearing following the close of discovery for the purpose of interpreting the patent claims in issue in this case.

DATED this 2 day of February, 2005.

Respectfully submitted,

McCREA MARTIN ALLISON, LTD.

By _____

Charles H. McCrea, Jr. (#104)
Anne Marie Doucette (#7792)
3191 East Warm Springs Road
Las Vegas, Nevada 89120-3147

*Attorneys for Defendant*

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of February, 2005, I caused to be served a true and correct copy of the foregoing **DEFENDANTS' MOTION FOR ORDER SCHEDULING MARKMAN HEARING** on the following person(s) by the following method(s) pursuant to NRCP 5(b):

J. Colby Williams (#5549)
CAMPBELL & WILLIAMS
700 South Seventh Street
Las Vegas, Nevada 89101

*Attorneys for Shuffle Master, Inc.*

Paul D. Collier, Esq.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601

*Attorneys for Shuffle Master, Inc.*

☒ by placing a true and correct copy of the above-mentioned document(s) in a sealed envelope, first class postage fully pre-paid, in the United States mail.

☐ by facsimile transmission only, pursuant to the amendment to the Eighth Judicial District Court Rule 7.26, by faxing a true and correct copy of the same to each at the facsimile number(s) indicated below.

_____
An employee of MᴄCREA MARTIN ALLISON, LTD.

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

McCREA MARTIN ALLISON, LTD.
Charles H. McCrea, Jr. (#104)
Anne Marie Doucette (#7792)
3191 East Warm Springs Road
Longford Plaza East, Building 13
Las Vegas, Nevada 89120-3147
Tel     (702) 933-4444
Fax    (702) 933-4445

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHUFFLE MASTER, INC., | Case No.  CV-S-04-0980-JCM-PAL |
| Plaintiff, | |
| v. | **DECLARATON OF YEHIA AWADA IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT** |
| YEHIA    AWADA;   and   GAMING ENTERTAINMENT, INC., | |
| Defendants. | |

Pursuant to 28 U.S.C. § 1756, I, Yehia Awada, hereby declare and state as follows:

1.      My name is Yehia Awada. I am of legal age and under no legal disability.  I have personal knowledge of the facts stated in this Declaration and know them to be true and correct.  I am offering this Declaration in support of Defendants' opposition to Shuffle Master's Motion for Summary Judgment of Infringement.

2.      I am the CEO and President of Defendant Gaming Entertainment, Inc. ("GEI") in the above-styled action. GEI is a Nevada corporation with its principal place of business at 4054 S. Industrial Road, Las Vegas, NV 89103.

Page 1 of 5

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

3.      Defendant GEI is in the business of developing, manufacturing and selling casino table games.

4.      I am the inventor of a game known as 3-5-7 Poker. This game was conceived by me in late 2000 and early 2001. On July 31, 2001, I filed a patent application with the U.S. Patent and Trademark Office ("USPTO") for the game 3-5-7 Poker. It was assigned Application No. 01/917082. My patent application was granted and on March 16, 2004, the USPTO issued U.S. Patent No. 6,705,943 (the "'943 Patent"). A copy of the '943 Patent is attached hereto as Exhibit 1.

5.      I have been involved in the gaming industry for more than 25 years. I have worked in casinos in Las Vegas as a dealer, floorman, supervisor and shift manager. I am also a professional poker player and compete in many tournaments. In July 2004, I won the Seven Card Stud competition of the World Series of Poker and came in second in the Texas Hold'em competition. I am very familiar with casino games of all types, particularly card games and, most particularly, poker games.

6.      In addition to the '943 Patent, I have received patents on four other games invented by me. They are:

| U.S. Patent No. | Title |
| --- | --- |
| 6,478,675 | Video Poker Game |
| 6,206,780 | Multi Poker |
| 5,988,643 | Multi Action Card Game for a Casino |
| 5,921,550 | Stud Poker Game for a Casino |

7.      As a result of my extensive experience in the gaming industry, I am well acquainted with game methods and the language used to describe game play. I consider myself a person possessing at least "ordinary skill in the art" of developing and playing casino card games, particularly games involving variations of poker.

8.      GEI has been promoting and installing its 3-5-7 Poker product in casinos in numerous states for over two years. GEI first displayed 3-5-7 Poker at the Global Gaming Expo gaming

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

convention held in Las Vegas, Nevada from October 1 through October 3, 2001. At that show, numerous employees or representatives of Shuffle Master, Inc. ("Shuffle Master") observed 3-5-7 Poker in play, discussed the product with me, and even took product literature describing 3-5-7 Poker.

9.      From September 17-19, 2002, GEI displayed 3-5-7 Poker at the 2002 Global Gaming Expo gaming convention. Again, employees of Shuffle Master approached my booth to say hello and view our products. Of note, during the entire 2002 convention, GEI's booth displaying 3-5-7 Poker was directly across the aisle from, and in full view of, Shuffle Master's own booth at the convention.

10.      The game 3-5-7 Poker is three stud poker games within one game. The first game is stud poker with three cards; the second game is stud poker with five cards; and the third game is stud poker with seven cards (best five cards). Except in the state of Colorado, the game 3-5-7 Poker is played as follows:

a.      A player must place a wager on each of the first two games and has the option of placing a wager on the third game.

b.      The dealer deals three cards to each player.

c.      The dealer deals four community cards face down on the table.

d.      The dealer resolves each three-card poker hand paying players for predetermined combinations of cards according to a predetermined pay table.

e.      After all three-card stud poker hands are resolved, the dealer turns over two of the community cards, which are then deemed included as part of each player's hand.

f.      The dealer resolves each five-card stud poker hand paying players for predetermined combinations of cards according to a predetermined pay table.

g.      After all five-card stud poker hands are resolved, the dealer turns over the two remaining community cards, which are then deemed included as part of each player's hand for those players that placed the optional third full wager.

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

b.      The dealer resolves each seven-card stud poker hand by making the best five-card hand and paying players for predetermined combinations of cards according to a predetermined pay table.

In the state of Colorado, for regulatory reasons, the game 3-5-7 Poker is played exactly as above except that at the outset of the game the player may place a full wager on any one, two or all three games of stud poker.

11.     I have reviewed and am familiar with U.S. Patent No. 6,698,759 (the "'759 Patent") issued to Shuffle Master and Shuffle Master's contention that my game 3-5-7 Poker infringes the '759 Patent, in particular Claims 1, 2, 4, 8 and 21 thereof. The application for the '759 Patent, was filed one month after Shuffle Master reviewed my game 3-5-7 Poker at the 2001 Global Gaming Expo.

12.     I am informed and believe that the '759 Patent is invalid and unenforceable for the following reasons: Neither Derek Webb nor Roger Snow, the listed inventors on the '759 Patent, invented the game methods claimed in the '759 Patent which are allegedly infringed by the game 3-5-7 Poker. As noted above, the game method of the game 3-5-7 Poker was disclosed to Shuffle Master at an industry tradeshow in Las Vegas, Nevada, on October 1, 2001, prior to the filing of the '759 Patent application. By filing the '759 Patent application, Shuffle Master attempted to copy, within the strictures of a patent application continuation, some of the elements of the game 3-5-7 Poker. In addition, terms used in the claims of the '759 Patent, including "single part wager" and "part wager" are indefinite and would not be understood by someone skilled in the art. These terms are not defined in the specifications of the '759 Patent rendering the written description of the invention inadequate.

13.     In addition, contrary to Shuffle Master's contention, the game 3-5-7 Poker does not infringe the '759 Patent for at least the following reasons:

a.      All methods claimed therein involve "part" wagers. The term "part" implies something less than all and indicates that the game method contemplated by the '759 Patent

McCREA MARTIN ALLISON, LTD.
3191 E. Warm Springs Road
Longford East, Bldg. 13
Las Vegas, Nevada 89120-3147

Page 4 of 5

requires a subsequent addition to the "part wager" before the game can be concluded.  The game 3-5-7 Poker requires a full wager (or wagers) to be made at the game outset and, once the wager(s) is (are) made, a player has no ability to add to any wager.

b.       The game 3-5-7 Poker does not involve "placing a first single part wager to participate in a casino three-card poker type game".  Except in the state of Colorado, to participate in the game 3-5-7 Poker, a player must place a full wager on each of the first two or all three games that are part of the game 3-5-7 Poker.  In the state of Colorado, a player must place a full wager on at least one of the games and may optionally place a full wager on any second game or all three games.

c.       The game 3-5-7 Poker does not involve "a dealer dealing a hand of three cards to each player".  In the game 3-5-7 Poker, the dealer deals three cards that are personal to each player and four community cards.

d.       The game 3-5-7 Poker does not involve "resolving each player's three card hand according to a predetermined hierarchy of poker hands". In the game 3-5-7 Poker, the player is wagering that his hand will contain a predetermined combination of cards that will qualify the player to receive a predetermined payout based on a pay table.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _7_ day of February 2005.

YEHIA AWADA

Page 5 of 5



**United States Patent**                                         **6,705,943**

*Awada*                                                         **March 16, 2004**

## Combined poker games

### Abstract

In one of three table games and in one of two games played on a gaming machine, three card Stud Poker, five card Stud Poker and seven card Stud Poker are combined. In a second table game, five card Stud Poker and Seven Card Stud Poker are combined. In a third table game three card Stud Poker and seven card Stud Poker are combined. In a second game played on the gaming machine, five card Draw Poker and seven card Stud Poker are combined.

Inventors: **Awada; Yehia** (3982 Roundwood St., Las Vegas, NV 89117)
Appl. No.: **917082**
Filed:      **July 30, 2001**

| | |
|---|---|
| **Current U.S. Class:** | **463/13**; 273/292 |
| **Intern'l Class:** | A63F 013/00 |
| **Field of Search:** | 463/10-13 273/292 |

### References Cited [Referenced By]

#### U.S. Patent Documents

| | | | |
|---|---|---|---|
| 5042818 | Aug., 1991 | Weingardt | 463/13. |
| 5486005 | Jan., 1996 | Neal | 273/292. |
| 5810354 | Sep., 1998 | Banyai | 273/292. |
| 5975529 | Nov., 1999 | de Keller | 273/292. |
| 6402147 | Jun., 2002 | Lo | 463/13. |
| 6402150 | Jun., 2002 | Jones | 273/292. |

#### Other References

Three Fifty Seven (357 or 3-5-7) [http://www.oinc.net/poker/357.html]. Welcome to the Poler Page [http;//www.oinc.net/poker]. Last updated Jun. 7, 2001. Copyright 1999,2000,2001 Brian O'Neill (oneil@oinc.net).*
Pokerproducts, com:357 [http.//www.pokerproducts.com/howtoplay.html]. Copyright 1998-2002 POKERproducts.com.

*Primary Examiner:* Sager; Mark
*Assistant Examiner:* Capron; Aaron
*Attorney, Agent or Firm:* Weiss; Leonard

### Claims

I claim:

1. In the method of using a standard deck of fifty two cards to play a game, comprising the steps of:

dealing three cards to a player;

providing an opportunity for the player to make a wager on a rank of a Poker hand formed from said dealt cards;

dealing out four community cards;

giving the player an option of making a five card Poker wager and a seven card Poker wager;

augmenting said player's three cards with two of said community cards to form a five card Stud Poker hand; and

augmenting said player's three cards with said four community cards to form a seven card Stud Poker hand; and

settling said wagers in accordance with a payout table.

2. In the method of claim 1 wherein said step of settling comprises the steps of:

making a three card payout to said player based upon a rank of said three card Poker hand;

making a five card payout to said player based upon a rank of said five card Poker hand; and

making a seven card payout to said player based upon a rank of said seven card Poker hand.

3. In the method of claim 1 wherein said community cards are dealt face down.

4. In the method of claim 1 wherein said community cards are dealt face up.

5. In the method of claim 1 wherein a joker is used as a wild card in playing the game.

6. In the method of claim 1 comprising the additional step of making a bonus payout to said player when

a Poker hand has a rank higher than a known rank.

7. In the method of claim 1 wherein said player has an option of making a five card Poker wager and said player is dealt five cards to form a five card poker hand, and two community cards are dealt out face down, comprising the additional steps of:

a player of making a seven card wager; and

augmenting said five cards with said two community cards to form a seven card Stud Poker hand.

8. The method of claim 7 comprising the additional steps of:

making a five card payout to said player based upon a rank of said five card Poker hand; and

making a seven card payout to said player based upon a rank of a selected five cards of said seven card hand.

9. In the method of claim 7, comprising the additional step of permitting said player to increase said seven card Stud Poker wager prior to either of said community cards being turned face up.

10. In the method of claim 7, comprising the additional step of permitting said player to rescind said seven card wager upon forfeiture of a portion of said seven card Stud Poker wager.

11. In the method of claim 7 wherein a joker is used as a wild card in playing the game.

12. In the method of claim 7 comprising the additional step of making a bonus payout to said player when a Poker hand has a rank higher than a known rank.

13. In a method of using a standard deck of fifty two cards to play a game, comprising the steps of:

a player making a seven card Stud Poker wager;

dealing four cards to said player;

dealing out three community cards face down;

giving said player an option of making a three card Stud poker wager after said four cards are dealt;

turning said community cards face up, a three card Stud Poker hand being formed by said community cards and a seven card Stud Poker hand being formed by said four cards augmented by said community cards;

making a three card payout to said player based upon the rank of said three card hand; and

making a seven card payout to said player based upon a rank of a selected five cards of said seven card hand.

14. In the method of claim 13 wherein a joker is used as a wild card in playing the game.

15. In the method of claim 13 comprising the additional step of making a bonus payout to said player when a Poker hand has a rank higher than a known rank.

16. In the method of playing a Poker game on a gaming machine that stores signal representations of images of fifty two cards of a standard deck of cards, comprising the steps of:

giving a player an option of making a payment representative of a three card wager, a five card wager and a seven card wager;

causing a video screen of the gaming machine to provide an image of each of seven cards that are face down;

said player causing said video screen to replace three of said face down images with images of three cards that are face up, thereby providing an image of a three card Stud Poker hand, face up and images of four cards that are face down;

making a three card payout to said player based upon a rank of said three card hand, thereby settling said three card wager;

said player causing images of two of said four face down cards to be replaced by images of two cards that are face up, thereby providing an image of a five card Stud Poker hand and images of two cards that are face down;

making a five card payout to said player based upon a rank of said five card hand, thereby settling said five card wager;

said player causing images of said two face down cards to be replaced by images of two cards that are face up, thereby providing images of seven cards face up that form a seven card hand; and

making a seven card payout to said player based upon a rank of five cards of said seven card hand.

17. In the method of claim 16 wherein said gaming machine stores a signal representation of a joker which is a wild card.

18. In the method of playing a Poker game on a gaming machine that stores signal representations of images of fifty two cards of a standard deck of cards, comprising the steps of:

giving a player an option of making a payment representative of a five card wager and a seven card wager;

causing a video screen of the gaming machine to provide initial images of five cards face up;

said player causing said video screen to replace any of said initial images with images of cards that are face up, thereby providing an image of a five card Draw Poker hand;

making a Draw Poker payout to said player based upon the rank of said Draw Poker hand, whereby said player's five card wager is settled;

providing images of two additional cards face up, thereby providing an image of a seven card Stud Poker hand; and

making a seven card Stud Poker payout to said player based upon a rank of five cards of said Stud Poker hand, whereby said player's seven card wager is settled.

19. In the method of claim 18 wherein said gaming machine stores a signal representation of a joker which is a wild card.

### Description

## BACKGROUND OF THE INVENTION

1. Field of Invention

This invention is in the general field of casino gaming and, more particularly, is a method of playing a game having features of a plurality of different types of poker games.

2. Description of the Prior Art

Poker is the most frequently played card game in the United States. A player in a Poker game wagers that he holds a Poker hand having a rank that is higher than a rank of a Poker hand held by any other player.

Almost invariant features of the Poker game is that it is played with a standard deck of fifty two cards and a Poker hand is comprised of five of the cards. The player with the Poker hand having the highest rank is usually the winner. Rankings of five card Poker hands, in descending order, are given as:

ROYAL FLUSH, (Ace, King, Queen, Jack and 10 of the same suit);

STRAIGHT FLUSH, (five cards in sequence in any suit, i.e. Jack, 10, 9, 8, 7, of the same suit);

FOUR OF A KIND, (four Aces is highest);

FULL HOUSE, (THREE OF A KIND plus a PAIR, i.e., 10, 10, 10, King King);

FLUSH (Five cards of the same suit);

STRAIGHT (five cards in sequence but of different suits, i.e., (Jack, 10, 9, 8, 7);

THREE OF A KIND (Three cards of the same rank, i.e., three Aces);

TWO PAIRS (i.e., two Kings and two 10's);

ONE PAIR (two 5's); and

NO PAIR

A ranking of cards comprising the five card Poker hand is germane to determining its rank. Thus, for example, the five card Poker hand that is comprised of a pair of 10's has a higher rank than the five card Poker hand that is comprised of a pair of 9's.

A well known variation of poker is a game called seven card stud poker where a player is dealt seven cards. A five card poker hand of the highest possible is selected from the seven dealt cards. Ranks of

selected five card poker hands for all players are compared to determine a winner.

Usually, there are eight players in the seven card stud game. Prior to dealing a round of cards to the eight players, such as a round of first cards, for example, a dealer usually deals what is known as a burn card, face down, that is not used in forming the player's hands. Accordingly, seven burn cards are dealt during the seven card stud game. Because there are eight players and because of the burn cards, it may not be possible to provide a seventh card to all of the players. When it is not possible, the dealer deals a community card, face up, that is regarded as each player's seventh card.

A more recent variation of poker is a game called three card poker where three cards are dealt to each player. A ranking of a three card poker hand, in descending order, is given as:

ROYAL FLUSH

STRAIGHT FLUSH

THREE OF A KIND

STRAIGHT

FLUSH

ONE PAIR

The casino usually tries to promote games of the type where the player makes wagers against the casino rather than against the other players. By having the player wager against the casino there is an increase in the casino's revenue. Accordingly, a game where one player wagers against another player is not regarded as highly desirable by a casino manager.

Heretofore, there has not been a poker game that combines features of well known poker games. Combining features of different types of poker games into a single game would enhance the interest of a casino patron.

SUMMARY OF THE INVENTION

An object of the present invention is to provide a game that includes features of three card poker, five card stud Poker, five card Draw Poker and seven card stud Poker.

Another object of the invention is to provide a poker game where a payout is made by a casino to a winning player in accordance with a payout table.

According to one aspect of the invention, three cards are dealt to a player whereby the player has a three card Poker hand. The three cards are augmented by two cards whereby the player has five cards of a five card Poker hand. The five cards are augmented by two cards, whereby the player has a seven card Poker hand.

According to another aspect of the invention, five cards are dealt to a player whereby a player has a five card Stud Poker hand. The player is given an option of replacing a card of the five card Stud Poker hand whereby the player has a five card Draw Poker hand. The Draw Poker hand is augmented by two cards whereby the player has a seven card Stud Poker hand.

According to another aspect of the invention, three community cards form a three card Stud Poker hand. The three community cards additionally augment four cards dealt to a player to form a seven card Stud Poker hand.

According to another aspect of the invention, gaming machines are used to play a game that is a combination of three card Stud Poker, five card Stud Poker and seven card Stud and a game that is a combination of five card Draw Poker and seven card Stud Poker.

Other objects, features, and advantages of the invention should be apparent from the following description of the preferred embodiment thereof as illustrated in the accompanying drawing.

BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a plan view of a portion of a playing surface whereon a game is played in accordance with a first embodiment of the invention;

FIG. 2 is a plan view of a portion of a playing surface of a table where a game of is played in accordance with a second embodiment of the invention;

FIG. 3 is a plan view of a portion of a playing surface of a table where a game of is played in accordance with a third embodiment of the invention;

FIGS. 3a-3d are plan views of a video screen of a gaming machine used to play a game in accordance with a fourth embodiment of the invention; and

FIGS. 4a-4c are plan views of a video screen game is played in accordance with a fifth embodiment of the invention.

DESCRIPTION OF THE EMBODIMENTS

All games described hereinafter utilize a standard deck of fifty two cards.

As shown in FIG. 1, in accordance with a first embodiment of the invention, a game is played on a semi-circular top surface 10 of a table that has an arcuate edge 12. Player stations 14, 16, 18 are proximal to the edge 12.

The player station 14 includes a showing of circles 20, 21, 22 with lettering of the numerals, 3, 5, 7, respectively, therein. The player stations 16, 18 have circles similar to those of the player station 14.

Community cards are used in the first embodiment. A showing of rectangular community card placement locations 24, 25, 26 are carried near the center of the surface 10. Additionally, lettering of a three card Stud Poker payout table 28, a five card Stud Poker payout table 29 and a seven card Stud Poker payout table 30 is carried upon the surface 10 at any suitable location.

The payout tables 28-30 provide pairs of entries. One entry of a pair is a poker rank; the other entry is a payout multiplier. Thus, for example, when a three card poker hand is a straight flush and there has been a three card Poker wager of one dollar by a player, there is a payout to a player of an amount equal to forty dollars (forty multiplied by one dollar).

Prior to a start of play, the station 14 player has an option of making any of three Stud Poker wagers that include a three card Stud Poker wager, a five card Stud Poker wager and a seven Stud card Poker wager.

The Stud wagers are made by the station 14 player when cheques representative of the amounts of the three, five, and seven card wagers are placed within the circles 20-22, respectively. The station 16 and the station 18 players have a similar option and make wagers in a manner similar to that described hereinbefore. All of the players are required to make at least one of the three wagers.

After the Stud wagers have been made, three cards are dealt to each of the players whereby each of the players has a three card Stud Poker hand. As explained hereinafter, the three cards of the players are augmented by two community cards whereby each player has five cards of a five card Stud Poker hand. The five cards are augmented by an additional two community cards whereby each player has a seven card Stud Poker hand.

After the three cards are dealt, a community card is preferably placed face down upon each of the locations 24-27. Alternatively, community cards at the locations 24-27 are placed face up.

In one alternative embodiment, the community cards are dealt face down. After the three cards are dealt and prior to the community cards being turned face up, each of the players has an option of rescinding the seven card Stud Poker wager upon forfeiture of a portion of the seven card wager.

When the station 14 player has made the three card wager, a payout is made to the station 14 player in accordance with the table 28 whereby the station 14 player's three card wager is settled. Thus, for example, when the station 14 player's three card hand is a flush, the station 14 player wins a four to one payout. When the station 14 player's three card hand has a rank of less than one pair, the station 14 player loses the three card wager. In a similar manner, three card wagers of the station 16 player and the station 18 player are settled.

After all of the three card Stud Poker wagers have been settled, the cards at the locations 24, 25 are turned face up whereby the station 14 payer has a five card Stud Poker hand that includes the station 14 player's three cards augmented by the cards at the locations 24, 25. When the station 14 player has made the five card wager, a payout is made to the station 14 player in accordance with the table 29 whereby the station 14 player's five card Stud wager is settled.

Thus, for example, when the station 14 player's five card hand includes a full house, the station 14 player wins a twelve to one payout. When the station 14 player's five card hand has a rank of less than one pair of sixes, the station 14 player loses the five card wager. In a similar manner, five card wagers of the station 16 player and the station 18 player are settled.

After all of the five card wagers have been settled, the cards at the locations 26, 27 are turned face up whereby the station 14 player has a seven card Stud Poker hand that includes the station 14 player's three cards augmented by the cards at the locations 24-27. When the station 14 player has made the seven card wager, a payout is made to the station 14 player in accordance with the table 30 whereby the station 14 player's seven card wager is settled.

Thus, for example, when highest possible rank of five cards of the seven card hand of the station 14 player is four of a kind, the station 14 player receives a seven to one payout. When the highest possible rank of five cards of the station 14 player's seven card hand is less than two pair, tens high, the station 14 player loses the seven card wager. In a similar manner, seven card wagers of the station 16 player and the station 18 player are settled.

It should be understood that a wild card, such as a joker, may be included as a wild card in the first embodiment and in all other embodiments described hereinafter. Additionally, there may be a bonus payout to a player who has a hand that is a royal flush, for example.

As shown in FIG. 2, in accordance with a second embodiment of the invention, the station 14 includes the circles 21, 22. The station 16 and the station 18 include similar circles. Additionally included are the card placement locations 24, 25 and the payout tables 29, 30.

Prior to a start of play, the station 14 player makes a five card Stud Poker wager and a seven car Stud Poker wager by placing cheques within the circles 21, 22, respectively. Similar wagers are made by the station 16 player and the station 18 player.

When the wagers have been made, five cards are dealt to the station 14 player and a card is placed, face down, at the location 24 and the location 25.

After reviewing the five dealt cards, the station 14 player has an option of doubling the seven card wager and an option of rescinding the seven card wager. When the recission option is exercised, the station 14 player forfeits a portion of the seven card wager.

The station 16 player and the station 18 player are dealt five cards, face down, and have options similar to those of the station 14 player. The five card wagers are settled in a manner similar to that described in the first embodiment.

After the five card wagers have been settled, cards at the locations 24, 25 are turned face up whereby the station 14 has a seven card Stud Poker hand comprised of the five dealt cards and the cards at the locations 24, 25. Similarly, the station 16 player and the station 18 player have seven card Stud Poker hands. The seven card wagers are settled in a manner similar to that described in the first embodiment. It should be understood that a joker may be included as a wild card in the second embodiment.

As shown in FIG. 3, in accordance with a third embodiment of the invention, the station 14 includes the circles 20, 22. The station 16 and the station 18 include similar circles. Additionally included are the card placement locations 24, 25, 26 and the payout tables 28, 30.

Prior to a start of play, the station 14 player makes a seven car Stud Poker wager by placing cheques within the circle 22. A similar wager is made by the station 16 player and the station 18 player.

When the wager has been made, four cards are dealt to the station 14 player and a community card is placed, face down, at the locations ^4, 25, 26.

After reviewing the four dealt cards, the station 14 player has an option of making a three card Stud Poker wager. The station 16 player and the station 18 player have a similar option. Thereafter, the cards at the locations 24, 25, 26 are turned face up.

The cards at the locations 24, 25, 26 form a three card Stud Poker hand. When the station 14 player makes the three card wager, a three card payout is made to the station 14 player in accordance with the table 28.

The four cards dealt to the station 14 player and the cards at the locations 24, 25, 26 form a seven card Stud Poker hand. A seven card payout is made to the station 14 player in accordance with the table 30. Similar payouts are made to the station 16 player and to the station 18 player.

In accordance with a fourth embodiment of the invention, a gaming machine stores a signal representation of images of fifty two cards of a standard deck of cards. Prior to a start of play of the gaming machine, a player has an option of making any of three wagers that include a three card Stud

Poker wager, a five card Stud Poker wager and a seven card Stud Poker wager. The wagers are made by depositing money representative of the wagers within the gaming machine.

As shown in FIG. 3a, after the money is deposited, a video screen 62 of the gaming machine provides a video image of cards 63-69, face down. Thereafter, the gaming machine player touches any three of the images 63-69.

As shown in FIG. 3b, in response to the images 63, 64, 69 being touched, for example, they are replaced by images 631, 641, 691, respectively. The images 631, 641, 691 are of a nine of clubs, a nine of spades and a three of diamonds, respectively, thereby providing an image of a three card Stud Poker hand. A payout is made to the gaming machine player in accordance with the payout table 28 of the first embodiment, whereby the gaming machine player's three card wager is settled. After the gaming machine player's three card is settled, the gaming machine player touches any two of the images 65-68.

As shown in FIG. 3c, in response to the images 66, 68 being touched, for example, they are replaced by images 661, 681, respectively. The images 661, 681 are of an eight of hearts and a king of hearts, respectively, whereby an image of a five card Stud Poker hand comprised of the images 331, 341, 361, 381, 391 is provided. A payout is made to the gaming machine player in accordance with the payout table 29 of the first embodiment, whereby the gaming machine player's five card wager is settled. After the gaming machine player's five card wager is settled, the gaming machine player touches the images 65, 67.

As shown in FIG. 3d, in response to the images 65, 67 being touched, they are replaced by images 651, 671, respectively. The images 651, 671 are of a king of spades and a queen of spades, respectively, whereby an image of a seven card Stud Poker hand comprised of the images 631, 641, 651, 661, 671, 681, 691 is provided. A payout is made to the gaming machine player in accordance with the payout table 30 of the first embodiment, whereby the gaming machine player's seven card Stud Poker wager is settled.

In accordance with a fifth embodiment of the invention, similar to that described hereinbefore, provides the gaming machine player with an option of making a five card Draw Poker wager and the seven card Stud Poker. Money representative of the five card Draw and seven card Stud wagers is deposited in the gaming machine.

After the money is deposited, the video screen 62 provides the video image of the cards 63-69 face down (FIG. 3a). Thereafter, the gaming machine player touches any five of the images 63-69.

As shown in FIG. 4a, in response to the images 63, 64, 66, 68, 69 being touched, for example, they are replaced by the images 631, 641, 661, 681, 691. Additionally, images 632, 642, 662, 682, 692 of hold buttons are provided proximal to the images 631, 641, 681, 691, respectively. An image of a replace button 700 is positioned on the video screen 62 at any suitable location.

As shown in FIG. 4b, in response to the gaming machine player touching the hold buttons 662, 682, 692 (FIG. 4a), for example, and then making a first touching the image 700, the images 661, 681, 691 are replaced by images 663, 683, 693 which are the king of diamonds, ace of hearts and ace of spades, respectively. Hence, the gaming machine player has a five card Draw Poker hand comprised of cards having the images 631, 641, 663, 683, 693.

A payout is made to the gaming machine player in accordance with a five card Draw Poker payout table (not shown) whereby the gaming machine player's five card Draw Poker wager is settled. After the gaming machine player's five card Draw Poker wager is settled, the gaming machine player makes a

second touching of the image 700.

As shown in FIG. 4c, in response to the images 65, 67 being touched, the images 65, 67 are replaced by images 654, 674, respectively. The images 654, 674 are of a four of clubs and a jack of spades, respectively, whereby an image of a seven card Stud Poker hand comprised of the images 631, 641, 654, 663, 674, 683, 693 is provided. A payout is made to the gaming machine player in accordance with a modified seven card Stud Poker payout table (not shown), whereby the gaming machine player's seven card Stud Poker wager is settled.

It should be understood that games corresponding to those disclosed herein may be played on the internet or on a computer.

While the invention has been particularly shown and described with reference to embodiments, it should be understood by those skilled in the art that changes in form and detail may be made therein without departing from the spirit and scope of the invention.

* * * * *



1  Donald J. Campbell (#1216)
   J. Colby Williams (#5549)
2  CAMPBELL & WILLIAMS
   700 South Seventh Street
3  Las Vegas, NV 89101
   Telephone: (702) 382-5222
4  Facsimile: (702) 382-0540

5
   Barry F. Irwin
6  Paul D. Collier
   KIRKLAND & ELLIS LLP
7  200 East Randolph Drive
   Chicago, IL 60601
8  Telephone: (312) 861-2000
   Facsimile: (312) 861-2200
9

DEC 27 2004

10              UNITED STATES DISTRICT COURT

11                   DISTRICT OF NEVADA

12  SHUFFLE MASTER, INC.,                    )
                                             )
13            Plaintiff,                     )
                                             )
14  v.                                       )   Case No. CV-S-04-0980-JCM (PAL)
                                             )
15  YEHIA AWADA and GAMING                   )
16  ENTERTAINMENT, INC.,                     )
                                             )
17            Defendants.                    )
                                             )
18                                           )
                                             )
19                                           )
    _____ )

20

21       SHUFFLE MASTER'S OBJECTIONS AND RESPONSES TO
             DEFENDANTS' FIRST INTERROGATORIES

22       Plaintiff Shuffle Master, Inc. ("Shuffle Master"), hereby objects and responds to

23  Defendants' First Interrogatories:

24                       GENERAL OBJECTIONS

25       To avoid undue and unnecessary repetition, all of Shuffle Master's specific respons

26  are subject to the following general objections:

27

28

K&E 10005786

1.      Shuffle Master objects to any interrogatory that seeks to impose discovery obligations upon Shuffle Master beyond those provided for by the Federal Rules of Civil Procedure, the Local Rules of this Court or governing case law.

2.      Shuffle Master objects to any interrogatory that seeks information protected by the attorney-client privilege, work product doctrine, and other common law or statutory privilege, or other documents and things that are otherwise immune from discovery.

3.      Shuffle Master objects to Defendants' definition of "you" as overly broad to the extent it incorporates entities not legally identified with Shuffle Master.

## SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:**

Identify each claim of U.S. Patent No. 6,698,759B (the "'759 Patent") you contend is infringed by the game "3-5-7 Poker".

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving its General Objections and specific ...ections stated below, Shuffle Master states that Defendants' 3-5-7 Poker infringes at least the foll...ng claims of the '759 patent: 1-6, 8 and 21, 23. Shuffle Master's investigation into infringement b...5-7 Poker of the '759 patent, however, is ongoing.   Accordingly, Shuffle Master reserves the right to supplement this response after sufficient time for discovery, the issuance of any claim construction order, and as necessary upon the discovery of additional bases or supporting facts relating to infringement.

Shuffle Master objects to this contention interrogatory as prematו e because information responsive to this interrogatory is the subject of ongoing discovery, investig...ı, and analysis, and, in part, may be the subject of expert analysis and testimony.   Shuffle Mastı further objects to this contention interrogatory as premature because it seeks contentions that may be the subject of expert reports which are not due until April 15, 2005, under the Court's Scheduling Order.

2

**INTERROGATORY NO. 2:**

With respect to each claim of the '759 Patent identified in your answer to Interrogatory No. 1, state in detail and with particularity how the claim is infringed by the game "3-5-7 Poker".

**RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiving its General Objections and specific objections stated below, Shuffle Master states that Defendants' 3-5-7 Poker infringes those claims of the '759 patent identified in response to Interrogatory No. 1 according to the claim-infringement charts attached as Exhibit A. Shuffle Master's investigation into infringement by 3-5-7 Poker of the '759 patent, however, is ongoing. Accordingly, Shuffle Master reserves the right to supplement this response after sufficient time for discovery, the issuance of any claim construction order, and as necessary upon the discovery of additional bases or supporting facts relating to infringement.

Shuffle Master objects to this contention interrogatory as premature because information responsive to this interrogatory is the subject of ongoing discovery, investigation, and analysis, and, in part, may be the subject of expert analysis and testimony. Shuffle Master further objects to this contention interrogatory as premature because it seeks contentions that may be the subject of expert reports which are not due until April 15, 2005, under the Court's Scheduling Order.

**INTERROGATORY NO. 3**

With respect to each claim of the '759 Patent identified in your answer to Interrogatory No. 1, identify each and every document supporting your contention that it is infringed by the game "3-5-7 Poker".

**RESPONSE TO INTERROGATORY NO. 3**

Subject to and without waiving its General Objections and specific objections stated below, Shuffle Master states that at least the following documents support its contention that those claims of the '759 patent identified in response to Interrogatory No. 1 are infringed by playing 3-5-7 Poker:

- Document entitled "How to Play 3-5-7 Poker," submitted as Exhibit A to Shuffle Master's Complaint and produced as SM-A 001249;

- Document entitled "3-5-7 Poker – Three Games in One," produced as SM-A 001250;

- Document entitled "3-5-7 Poker," produced as SM-A 001262-63.

- Document entitled "Supplemental Declaration of Yehia Awada," submitted in *Shuffle Master, Inc. v. Gaming Entertainment, Inc.*, C.A. No. 3:03 cv 122-M-A and produced as SM-A 001256-63.

Shuffle Master's investigation into infringement of the '759 patent is ongoing. Accordingly, Shuffle Master reserves the right to supplement this response after sufficient time for discovery, the issuance of any claim construction order, and as necessary upon the discovery of additional bases or supporting facts relating to infringement.

Shuffle Master objects to this contention interrogatory as premature because information responsive to this interrogatory is the subject of ongoing discovery, investigation, and analysis, and, in part, may be the subject of expert analysis and testimony. Shuffle Master further objects to this contention interrogatory as premature because it seeks contentions that may be the subject of expert reports which are not due until April 15, 2005, under the Court's Scheduling Order. Shuffle Master also objects to this interrogatory as overly broad to the extent it seeks the identity of "each and every document."

**INTERROGATORY NO. 4:**

State in detail and with particularity what you contend is a "reasonably royalty" as that term is used in paragraph (ii) in the Prayer for Relief on page 5 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 4**

Subject to and without waiving its General Objections and specific objections stated below, Shuffle Master states that, under 35 U.S.C. § 284, it is entitled to an amount of damages equal to lost profits resulting from any sales of Defendants' 3-5-7 Poker. At a minimum, however, Shuffle Master states that it is entitled to a reasonable royalty based on Defendants' infringement. Shuffle Master's investigation into the resulting damages from Defendants' infringement has only just begun and is ongoing. Accordingly, Shuffle Master reserves the right to supplement its response after sufficient

4

time for discovery and as necessary upon the discovery of additional bases or supporting facts relating to damages.

Shuffle Master objects to this contention interrogatory as premature because information responsive to this interrogatory is the subject of ongoing discovery, investigation, and is the subject of expert analysis and testimony. Shuffle Master further objects to this contention interrogatory as premature because it seeks contentions that may be the subject of expert reports which are not due until April 15, 2005.

**INTERROGATORY NO. 5**

Identify each and every document supporting your allegation in paragraph 15 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 5**

Subject to and without waiving its General Objections and the specific objections stated below, Shuffle Master identifies that at least the following documents prove that Shuffle Master is the owner of all right and interest in U.S. Patent No. 6,698,759:

- U.S. Patent No. 6,698,759, produced as SM-A 000001-11;

- Assignment document from inventors to Shuffle Master, produced as SM-A 000909-11.

Shuffle Master also objects to this interrogatory as overly broad to the extent it seeks the identity of "each and every document."

**INTERROGATORY NO. 6**

Identify each and every document supporting your allegation in paragraph 18 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 6:**

Subject to and without waiving its General Objections and specific objections stated below, Shuffle Master identifies that at least the following documents support Shuffle Master's contention that Defendants have in the past and are currently infringing, inducing infringement of, and/or contributing to the infringement of the '759 patent.

5

- Document entitled "How to Play 3-5-7 Poker," submitted as Exhibit A to Shuffle Master's Complaint and produced as SM-A 001249;

- Document entitled "3-5-7 Poker – Three Games in One," produced as SM-A 001250;

- Document entitled "3-5-7 Poker," produced as SM-A 001262-63.

- Document entitled "Supplemental Declaration of Yehia Awada," submitted in *Shuffle Master, Inc. v. Gaming Entertainment, Inc.*, C.A. No. 3:03 cv 122-M-A and produced as SM-A 001256-63.

Shuffle Master objects to this interrogatory as premature because information responsive to this interrogatory is the subject of on going discovery, investigation, and analysis, and, in part, may be the subject of expert analysis and testimony.  Shuffle Master also objects to this interrogatory as premature because it seek information that may be the subject of expert reports which are not due until April 15, 2005, under the Court's Scheduling Order.  Shuffle Master also objects to this interrogatory to the extent it calls for information that is protected by the attorney work product privilege.  Shuffle Master also objects to this interrogatory as overly broad to the extent it seeks the identity of "each and every document."

**.INTERROGATORY NO. 7:**

Identify each and every document supporting your allegation in paragraph 22 of the Complaints.

**RESPONSE TO INTERROGATORY NO. 7:**

Subject to and without waiving its General Objections and specific objections stated below, Shuffle Master identifies those documents that it identified in response to Interrogatory Nos. 3 and 6 and SM-A 001160 (March 2, 2004 correspondence from B. Irwin to C. McCrea regarding the '759 patent).  Shuffle Master further states that its investigation into those acts by Defendant that make this case exceptional is ongoing.  Accordingly, Shuffle Master reserves the right to supplement its response after sufficient time for discovery.

6

Shuffle Master objects to this interrogatory as premature because information responsive to this interrogatory is the subject of on going discovery, investigation, and analysis, and, in part, may be the subject of expert analysis and testimony. Shuffle Master also objects to this interrogatory as premature because it seek information that may be the subject of expert reports which are not due until April 15, 2005, under the Court's Scheduling Order. Shuffle Master further objects to this interrogatory to the extent it calls for information that is protected by the attorney work product privilege. Shuffle Master also objects to this interrogatory as overly broad to the extent it seeks the identity of "each and every document."

**INTERROGATORY NO. 8:**

Identify each person whom you expect to call as an expert witness at trial and, with respect to each such person:

State the subject matter on which he or she is expected to testify.

State the substance of the facts and opinions to which the expert is expected to testify and summarize the grounds for each opinion.

State which facts and/or opinion to which the expert is expected to testify are  contained in any documents or compendia of documents and identify each such document or compendium.

**RESPONSE TO INTERROGATORY NO. 8:**

Subject to and without waiving its General Objections and specific objections stated below, Shuffle Master states that it will make expert disclosures in accordance with the timing as provided under the Court's Scheduling Order, the Federal Rules of Civil Procedure and the local rules of the Court.

7

1

2   Dated:  December 22, 2004

3

4   _____

    Donald J. Campbell (#1216)
5   J. Colby Williams (#5549)
    CAMPBELL & WILLIAMS
6   700 South Seventh Street
    Las Vegas, NV  89101
7   Telephone: (702) 382-5222
    Facsimile:  (702) 382-0540
8
    Barry F. Irwin
9   Paul D. Collier
    KIRKLAND & ELLIS LLP
10  200 East Randolph Drive
    Chicago, IL 60601
11  Telephone:  (312) 861-2000
    Facsimile:  (312) 861-2200
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          8

## Exhibit A

| Claim 1 of the '759 Patent | Defendants' 3-5-7 Poker |
|---|---|
| A method of playing a wagering game, comprising: | 3-5-7 Poker is a casino wagering game. *See* SM-A 001249. |
| placing a first single part wager to participate in a casino three-card poker-type game; | Each player places a wager to participate in at least a three-card poker hand. *See* SM-A 001249. |
| a dealer dealing a hand consisting of three cards to each player who placed a first wager; | "Dealer will deal each player 3 cards . . ." *See* SM-A 001249. |
| and resolving each player's three-card hand according to a predetermined hierarchy of poker hands. | "Your first game is poker with 3 cards. Based on your first 3 cards, make a pair or better to win." *See* SM-A 001249; *see also* SM-A 001262-63. |

| Claim 2 of the '759 Patent | Defendants' 3-5-7 Poker |
|---|---|
| The method of claim 1, wherein a payout is made to the player on the first wager for one of a plurality of predetermined winning outcomes. | *See* SM-A 001262-63 (showing artwork for "Payout Schedule" for 3-5-7 Poker under which the following payouts are available for a 3-card hand: one-pair, 1 to 1; flush, 4 to 1; straight, 6 to 1; 3-of-a-kind, 25 to 1; straight flush, 40 to 1). |

| Claim 3 of the '759 Patent | Defendants' 3-5-7 Poker |
|---|---|
| The method of claim 2, wherein payouts on the first wager for at least one of the plurality of predetermined winning outcomes is made in proportion to an amount wagered. | The payouts for certain 3-card hands are proportioned to the amount wagered for the 3-card hand. *See* SM-A 001262-63 (showing artwork for "Payout Schedule" for 3-5-7 Poker under which the following payouts are available for a 3-card hand based on the amount wagered: one-pair, 1 to 1; flush, 4 to 1; straight, 6 to 1; 3-of-a-kind, 25 to 1; straight flush, 40 to 1). |

| Claim 4 of the '759 Patent | Defendants' 3-5-7 Poker |
|---|---|
| The method of claim 2, wherein the hands are resolved according to a pay table that pays a proportioned payout on the first bet for each predetermining winning outcome. | *See* SM-A 001262-63 (showing artwork for "Payout Schedule" for 3-5-7 Poker under which the following payouts are available for a 3-card hand: one-pair, 1 to 1; flush, 4 to 1; straight, 6 to 1; 3-of-a-kind, 25 to 1; straight flush, 40 to 1). |

| Claim 5 of the '759 Patent | Defendants' 3-5-7 Poker |
|---|---|
| The method of claim 4, where the proportioned payouts include possible payouts of between at least 1 to 1 and 100 to 1 against the single part wager. | The possible payouts for 3-5-7 Poker are between 1 to 1 and 100 to 1, ranging specifically from 1 to 1 for one-pair to 40 to 1 for a straight flush. *See* SM-A 001262-63 (showing artwork for "Payout Schedule" for 3-5-7 Poker under which the following payouts are available for a 3-card hand: one-pair, 1 to 1; flush, 4 to 1; straight, 6 to 1; 3-of-a-kind, 25 to 1; straight flush, 40 to 1). |

| Claim 6 of the '759 Patent | Defendants' 3-5-7 Poker |
|---|---|
| The method of claim 2, wherein the hands are resolved according to a pay table on the first bet, and wherein the method of payment is selected from the group consisting of a fixed payout, a proportional payout, a percentage of a progressive pot or a progressive jackpot amounts. | The three-card hand of 3-5-7 Poker is resolved according to a "Payout Schedule" and the method of payment is made according to a proportional payout based on the bet for the 3-card poker hand. *See* SM-A 001262-63 (showing artwork for "Payout Schedule" for 3-5-7 Poker under which the following payouts are available for a 3-card hand: one-pair, 1 to 1; flush, 4 to 1; straight, 6 to 1; 3-of-a-kind, 25 to 1; straight flush, 40 to 1). |

| Claim 8 of the '759 Patent | Defendants' 3-5-7 Poker |
|---|---|
| The method of claim 2, wherein the predetermined winning outcome is at least one pair. | *See* SM-A 001262-63 (showing artwork for "Payout Schedule" for 3-5-7 Poker under which the following payouts are available for a 3-card hand: one-pair, 1 to 1; flush, 4 to 1; straight, 6 to 1; 3-of-a-kind, 25 to 1; straight flush, 40 to 1). |

2

| Claim 21 of the '759 Patent | Defendants' 3-5-7 Poker |
|---|---|
| A method of playing a live casino table card game with physical cards comprising: | 3-5-7 Poker is a live casino game that uses physical cards. *See* SM-A 001249. |
| placing a single part wager to participate in a casino wagering three-card poker-type game; | In 3-5-7 Poker, each player places a wager to participate in at least a 3-card poker hand.. *See* SM-A 001249. |
| dealing a hand consisting of three cards to each player who placed a single part wager; and | "Dealer will deal each player 3 cards . . ." *See* SM-A 001249. |
| resolving each player's hand according to the rules of poker against a payout table providing payouts for predetermined ranks of poker-type hands; | "Your first game is poker with 3 cards. Based on your first 3 cards, make a pair or better to win." *See* SM-A 001249; *see also* SM-A 001262-63 (showing artwork for "Payout Schedule" for 3-5-7 Poker under which the following payouts are available for a 3-card hand: one-pair, 1 to 1; flush, 4 to 1; straight, 6 to 1; 3-of-a-kind, 25 to 1; straight flush, 40 to 1). |
| wherein at least some payouts proportional to the single part wager are available in resolving hands for obtaining a predetermined rank of a hand. | *See* SM-A 001262-63 (showing artwork for "Payout Schedule" for 3-5-7 Poker under which the following payouts are available for a 3-card hand: one-pair, 1 to 1; flush, 4 to 1; straight, 6 to 1; 3-of-a-kind, 25 to 1; straight flush, 40 to 1). |

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of December, 2004, a true and correct copy of the foregoing, **SHUFFLE MASTER'S OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST INTERROGATORIES**, was served via U.S. mail on the following:

> Charles H. McCrea, Jr., Esq.
> 3191 East Warm Springs Road
> Longford Plaza East, Building 13
> Las Vegas, Nevada 89120

_____
Counsel for Plaintiff

K&E 10005786

Donald J. Campbell, Esq. (#1216)
J. Colby Williams, Esq. (#5549)
CAMPBELL & WILLIAMS
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

Barry F. Irwin
Paul D. Collier
KIRKLAND & ELLIS
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Attorneys for Plaintiff
Shuffle Master, Inc.

___FILED   ___RECEIVED
___ENTERED ___SERVED ON
COUNSEL/PARTIES OF RECORD

2004 JUL 15  P 3: 02

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY_____DEPUTY

## UNITED STATES DISTRICT COURT
## DISTRICT OF NE

CV-S-04-0980-JCM-PAL

| | |
|---|---|
| SHUFFLE MASTER, INC., | ) |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT** |
| YEHIA AWADA AND GAMING ENTERTAINMENT, INC., | ) |
| Defendants. | ) **DEMAND FOR JURY** |

The plaintiff, Shuffle Master, Inc. ("SMI"), brings this action for patent infringement against the defendants, Yehia Awada and Gaming Entertainment, Inc. ("GEI") (collectively "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

## THE PARTIES

2.      Shuffle Master, Inc. ("SMI") is a corporation organized and existing under the laws of the State of Minnesota, having a principal place of business at 1106 Palms Airport Drive, Las Vegas, Nevada.

3.      On information and belief, Yehia Awada is a citizen of Nevada, domiciled at 3982 Round Wood Street, Las Vegas, Nevada 89117.

4.      On information and belief, Gaming Entertainment, Inc. ("GEI") is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business at 4054 S. Industrial Road, Las Vegas, Nevada.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Yehia Awada as Mr. Awada resides in the State of Nevada.

7.      This Court has personal jurisdiction over GEI as GEI does business in the State of Nevada.

8.      Venue is proper in the District under 28 U.S.C. § 1391 (b) and (c) and § 1400(b).

2

## FACTS COMMON TO ALL COUNTS

9.      On information and belief, Defendants manufacture, distribute, offer for sale and sell wagering games for use in casinos, including a 3-5-7 poker game ("3-5-7 Poker").

10.     The method of playing 3-5-7 Poker is accurately described in the instruction card attached as Ex. A.

11.     3-5-7 Poker includes a 3-card, 5-card and 7-card poker hand segment. Before any cards are dealt to the player(s), the player(s) must place at least a single part wager on the results of the 3-card poker segment. Before any cards are dealt, the player(s) may optionally wager on the 5-card poker segment and the 7-card poker segment.

12.     In at least one version of 3-5-7 Poker, the players do not have to wager on all three segments.

13.     In at least one version of 3-5-7 Poker, after being dealt three cards, the player(s) may choose to surrender any wager on the 7-card poker segment. Such surrender results in the player retrieving half of the wager on his 7-card poker segment, and forfeiting half to the dealer or house. Additional cards are provided and the wager remaining in play is resolved based upon the poker hand ranking of the cards provided to the player.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,698,759

14.     SMI repeats and realleges the allegations in Paragraphs 1-13 as though fully set forth herein.

3

15.     SMI is the owner of all right and interest in U.S. Patent No. 6,698,759 (the "'759 patent"), entitled "Player Banked Three Card Poker and Associated Games," which was duly and legally issued on March 2, 2004, to Derek J. Webb and Roger M. Snow. *See* Ex. B.

16.     The '759 patent is valid and enforceable.

17.     SMI offers for sale a 3-card poker game, which is an embodiment of the '759 patent.

18.     Defendants have in the past and are currently infringing, inducing infringement of, and/or contributing to the infringement of the '759 patent, at a minimum, by making, using, selling, offering to sell, advertising, leasing, offering to lease, and/or marketing 3-5-7 Poker in competition with SMI's 3-card poker game.

19.     Defendants have been aware of the '759 patent since at least March 2, 2004. Nevertheless, Defendants have continued to make, use, sell, offer to sell, advertise, lease, offer to lease and/or market 3-5-7 Poker in violation of the '759 patent without any basis to believe that it could do so without violating the '759 patent. As such, Defendants' infringement of the '759 patent has been deliberate, willful and intentional.

20.     Defendants have caused and will continue to cause SMI substantial damages and irreparable injury by virtue of their continuing infringement of the '759 patent. SMI will suffer further damage and irreparable injury unless and until the Defendants are enjoined by this Court from continuing such infringement.

## COUNT II – EXCEPTIONAL CASE

21.     SMI repeats and realleges the allegations in Paragraphs 1-20 as though fully set forth herein.

22.     Defendants have committed acts, and will continue to commit acts, that make this case exceptional under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, SMI respectfully requests that Judgment be entered in favor of SMI and against Defendants and that SMI be granted the following relief:

(i)     Entry of a permanent injunction restraining Defendants, its officers, agents, attorneys and all persons in active concert or participation with Defendants from further acts of infringement of the '759 patent, pursuant to 35 U.S.C. § 283;

(ii)    An award of damages sufficient to compensate SMI for Defendants' infringement of the '759 patent, in an amount not less than a reasonable royalty, pursuant to 35 U.S.C. § 284;

(iii)   An award of prejudgment interest, pursuant to 35 U.S.C. § 284;

(iv)    An award of increased damages in an amount not less than three times the amount of damages found by the jury or assessed by this Court, for Defendants' willful infringement, pursuant to 35 U.S.C. § 284;

(v)     An award of reasonable attorney's fees, pursuant to 35 U.S.C. § 285, and SMI's costs of suit, pursuant to FRCP 54(d)(1); and

(vi)    Such other and further relief as this Court shall deem appropriate.

## JURY DEMAND

SMI hereby demands a trial by jury.

Dated: July 15, 2004                                    Respectfully submitted,


J. Colby Williams (#5549)
CAMPBELL & WILLIAMS
700 South Seventh Street
Las Vegas, NV  89101
Telephone:  (702) 382-5222
Facsimile:  (702) 382-0540

Barry F. Irwin
Paul D. Collier
KIRKLAND & ELLIS LLP
200 E. Randolph Drive
Chicago, IL 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

*Attorneys for Plaintiff*
*Shuffle Master, Inc.*

# EXHIBIT "A"



# With 3-5-7 poker, you play 3 great games in one.

## THE PLAY

Place a wager on the First 2, or all 3 games. You may bet different amounts on each position according to the minimum/maximum.

Dealer will deal each player 3 cards and 4 cards to himself. After the players review their 1st game, Players have the option to surrender (return half your bet) their last wager, (7 card poker) or let it play.

## PLAY 3 CARDS

Your first game is poker with 3 cards. Based on your first 3 cards, make a pair or better to win.

## PLAY 5 CARDS

The dealer exposes his first two cards, your 3 cards and the dealer two cards. The game is simply 5 card poker, make a pair of 6's or better to win.

## PLAY 7 CARDS

Finally the dealer exposes the last two cards, now you're playing 7 card poker. Ten - high two pair or better to win. (Best 5 of 7 cards)



YOUR PLACE TO SHINE™

# EXHIBIT "B"



US006698759B2

(12) **United States Patent**　　　(10) Patent No.: **US 6,698,759 B2**
Webb et al.　　　　　　　　　　　(45) **Date of Patent:**　　Mar. 2, 2004

(54) **PLAYER BANKED THREE CARD POKER AND ASSOCIATED GAMES**

(75) Inventors: **Derek J. Webb**, Littleover (GB); **Roger M. Snow**, Las Vegas, NV (US)

(73) Assignee: **Shuffle Master, Inc.**, Las Vegas, NV (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 70 days.

(21) Appl. No.: **10/016,436**

(22) Filed: **Nov. 1, 2001**

(65) **Prior Publication Data**

US 2002/0153662 A1 Oct. 24, 2002

**Related U.S. Application Data**

(60) Continuation-in-part of application No. 09/249,118, filed on Feb. 2, 1999, now Pat. No. 6,345,823, which is a continuation-in-part of application No. 09/170,092, filed on Oct. 13, 1998, now Pat. No. 6,237,916, which is a continuation-in-part of application No. 08/889,919, filed on Jul. 10, 1997, now Pat. No. 6,056,641, which is a division of application No. 08/504,023, filed on Jul. 19, 1995, now Pat. No. 5,685,774.

(51) Int. Cl.⁷ ................................................ A63F 1/00

(52) U.S. Cl. ...................... 273/292; 273/274; 273/309; 463/13

(58) Field of Search ................................. 273/292, 274, 273/309; 463/12, 13

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 4,743,022 A | 5/1988 | Wood |
| 4,836,553 A | 6/1989 | Suttle et al. |
| 4,861,041 A | 8/1989 | Jones et al. |
| 5,022,653 A | 6/1991 | Suttle et al. |
| 5,046,736 A | 9/1991 | Bridgeman et al. |
| 5,098,107 A | 3/1992 | Boylan et al. |
| 5,174,579 A | 12/1992 | Griffiths |
| 5,257,784 A | 11/1993 | Boylan et al. |
| 5,257,810 A | 11/1993 | Schorr et al. |
| 5,265,877 A | 11/1993 | Boylan et al. |
| 5,275,415 A | 1/1994 | Wisted |
| 5,288,081 A | 2/1994 | Breeding |
| 5,294,128 A | 3/1994 | Marquez |
| 5,308,065 A | 5/1994 | Bridgeman et al. |
| 5,366,228 A | * 11/1994 | Kangsanaraks ............. 273/292 |
| 5,377,973 A | 1/1995 | Jones et al. |
| 5,397,128 A | 3/1995 | Hesse et al. |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

GB　　　　667345　　2/1952

OTHER PUBLICATIONS

"Three–Card Poker", "Three–Card Monte", "Brag", Scarne's Encyclopedia of Games, John Scarne, Harper & Row Publishers, p 28–31, 1973.*

(List continued on next page.)

*Primary Examiner*—Benjamin H. Layno
(74) *Attorney, Agent, or Firm*—Mark A. Litman & Assoc. P.A.

(57)　　　　　　　　**ABSTRACT**

A casino wagering game, comprises 1) placing a wager to participate in the game; 2) a dealer dealing a hand of three cards to each player who placed a wager; 3) resolving the player hands against a plurality of predetermined winning poker outcomes; and 4) paying each player odds whose hand consists of a predetermined winning outcome. The present invention comprises a casino style wagering game against a dealer, comprising the steps of placing a wager, dealing a three card poker hand to each player, dealing at least three cards to the dealer, and paying the player on the bet when a poker rank of his hand exceeds the rank of a dealer's hand. In a preferred form of the invention, the hierarchy of poker hand ranking differs from that of standard five card poker.

**48 Claims, 1 Drawing Sheet**



# US 6,698,759 B2
### Page 2

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 5,431,408 A | 7/1995 | Adams |
| 5,489,101 A | 2/1996 | Moody |
| 5,505,449 A | 4/1996 | Eberhardt et al. |
| 5,531,448 A | 7/1996 | Moody |
| 5,538,252 A | 7/1996 | Green |
| 5,584,486 A | 12/1996 | Franklin |
| 5,597,162 A * | 1/1997 | Franklin ...................... 273/292 |
| 5,630,757 A | 5/1997 | Gagin et al. |
| 5,653,444 A | 8/1997 | Dahl |
| 5,673,917 A | 10/1997 | Vancura |
| 5,685,774 A | 11/1997 | Webb |
| 5,732,950 A | 3/1998 | Moody |

5,762,340 A  *  6/1998  Feola  .......................... 273/292

OTHER PUBLICATIONS

Copyright filing with the Bureau voor de Intellectuele Eigendom, Aruba, 13 pgs (Jan. 13, 1998).

Published Rule Sheet for Casino Poker from Vegas World, 1 page (1982).

"Card Craps", Scarne's Encyclopedia of Card Games, pp. 321–323, (1948) Three Card Poker Disclosure by Derek J. Webb.

* cited by examiner



*Fig. 1*

US 6,698,759 B2

1

# PLAYER BANKED THREE CARD POKER AND ASSOCIATED GAMES

## RELATED APPLICATIONS

This application is a continuation-in-part of U.S. patent application Ser. No. 09/249,118 filed Feb. 12, 1999 now U.S. Pat. No. 6,345,823 which in turn is a continuation-in-part of U.S. patent application Ser. No. 09/170,092 filed Oct. 13, 1998, now U.S. Pat. No. 6,237,916 issued May 29, 2001, which is a continuation-in-part of U.S. patent application Ser. No. 08/889,919 filed Jul. 10, 1997 now U.S. Pat. No. 6,056,641 issued May 2, 2000, which is a division of U.S. patent application Ser. No. 08/504,023 filed Jul. 19, 1995, now U.S. Pat. No. 5,685,774 issued Nov. 11, 1997, which claims priority under 35 U.S.C. 119 from United Kingdom Patent Applications 94/26324 filed Dec. 29, 1994 and 94/14822 filed Jul. 22, 1994.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to games, more particularly to card-type games that are suitable for use in gaming establishments, and more particularly to poker-type card games that are suitable for use in gaming establishments.

### 2. Background of the Art

Casinos and leisure establishments continually require new games to offer their clientele. Such games are generally required to enable each player to play against a banker (who usually also acts as dealer) provided by the casino, rather than against other players. Alternatively, in a "card room" game each player may have the option to act as banker, whilst the establishment runs the game on behalf of the banker and takes fees from the players.

Players typically enjoy games which can be played rapidly and which offer players a plurality of choices. A plurality of choices heightens player interest in games. It would therefore be desirable to provide card games comprising a plurality of new wagering options.

Let it Ride Bonus® Stud Poker, as disclosed in Breeding U.S. patent application Ser. No. 09/495,149 filed on Jan. 31, 2000 entitled MULTI-TIERED WAGERING METHOD AND GAME, the content of which is hereby incorporated by reference, describes a primary card game in which the player plays a 5 card poker game. In the base game, a player makes a three part wager on the occurrence of one of a number of predetermined winning hands. Each player is dealt three cards, and the dealer is also dealt three cards. One dealer card is discarded, and the other two cards are placed face down on the table. The player may withdraw a first portion of his bet after he has examined his partial three-card hand. The community cards are used by each player to form a five card hand. After the dealer turns the first community card face up, the player is given the opportunity to withdraw a second portion of his bet. The third bet must remain at risk.

Standard poker rankings are used to determine the hierarchy of payouts. The hands that pay (highest to lowest) in a typical LET IT RIDE® basic game are: royal flush, straight flush, four of a kind, full house, flush, straight, three of a kind, two pair, and a pair. Each winning hand pays odds, and all winning outcomes and corresponding payout odds are listed in a pay table. Optionally, the player can place a side bet on the occurrence of certain high ranking hands within the predetermined winning outcomes in the base game. Both the player cards and the dealer's common cards are used to define the player's hand and corresponding hand ranking in

2

the side bet game. Players are required to make a multiple part bet, and can optionally withdraw part of the bet upon viewing some of the cards.

It would be desirable to provide a poker-style game with simplified betting structure and dealing procedures that provides a player with sufficient betting options to maintain player interest, and follows the rules of poker, as poker rules are well known throughout the world.

## SUMMARY OF THE INVENTION

In one form of the invention, a casino wagering game is provided that this disclosure comprises the steps of: 1) placing a single part wager to participate in the game; 2) a dealer dealing a hand of three cards to each player who placed a wager; and 3) resolving the player hands according to a predetermined hierarchy of poker hands. In one form of the invention, the hands are resolved against a pay table of predetermined winning poker outcomes and corresponding odds. Players are paid odds (payouts that are multiples of an amount wagered) when their hand consists of a predetermined winning outcome. This form of the invention is referred to as "the game against the pay table."

In a preferred form of the invention, the game is played as a live casino card game with physical cards, comprising the steps of: placing a single part wager to participate in a casino wagering three-card poker type game; dealing a hand consisting of three cards to each player who placed a single part wager; and resolving each player's hand according to the rules of poker against a payout table providing payouts for predetermined ranks of poker-type hands; wherein at least some of the payouts are proportional to the single part wager in resolving hands.

The present invention is also a method of playing a casino card game utilizing a standard deck of cards, comprising the steps of: placing a wager to participate in a three card poker game against a dealer; dealing three cards to the player; dealing at least three cards to the dealer; and resolving the hands according to the standard rules of poker. For purposes of this disclosure, this form of the invention is referred to as "the game against the dealer."

The three card hand against a pay table may be played individually, or in combination with a three card game against a dealer. The three card game against the dealer may be played individually, or in combination with a three card game against a pay table. The bets on each segment of the game may be mandatory, or optional. Bets on both games are mandatory in one example of the invention.

Other examples of the invention include playing one or more of the three card games in combination with other game segments as well. For example, in combination with placing a wager on a three card hand against a pay table, the player can bet one or more additional wagers on the occurrence of a five card poker hand, where the player receives at least two additional cards after the resolution of the three card hand, either in the form of dealt cards, dealer hand cards or common cards.

The three card poker game play methods of the present invention may be practiced as house banked games, or player banked games. When a game is house banked, the dealer is also the banker. When a game is player banked, the house provides a dealer, and the players take turns acting as banker. The house takes a commission either at a flat rate, or takes a percentage of bets placed.

## BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the invention will now be described, by way of example only, with reference to the accompanying drawing, in which:

3

FIG. 1 shows a playing surface for use in playing a card game of one embodiment of the present invention.

## DETAILED DESCRIPTION OF THE INVENTION

One aspect of the invention is a method of playing a wagering game, comprising the steps of: a) placing a single part first wager to participate in a casino three-card poker-type game; b) a dealer dealing a hand consisting of three cards to each player who placed a first wager; and c) resolving each player's hand according to a predetermined hierarchy of poker-type game outcomes. Payouts are preferably made on the first wager when the player obtains a predetermined winning outcome. In one form of the game, all payouts pay odds. That is, all payouts are made in proportion to the amount wagered, with the higher ranking poker hands paying a higher payout multiple than the lower ranking hands. Payouts are made to the player on the first wager for one of a plurality of predetermined winning outcomes. Preferably, all payouts are made in proportion to the first amount wagered.

Payout odds typically are printed on the playing surface and are referred to as a "pay table". One exemplary pay table for a three card poker game of the present invention is outlined below:

| Hand | Payout Odds |
|---|---|
| Straight Flush | 40:1 |
| Three of a Kind | 30:1 |
| Straight | 6:1 |
| Flush | 4:1 |
| Pair | 1:1 |

The standard rules of poker rank hands in the following descending order: Royal flush, straight flush, four of a kind, full house, flush, straight, three of a kind, two pair and a pair. According to a preferred form of the invention, four of a kind, full house and two pair are not included as those outcomes require more than three cards. A royal flush beats a straight flush. In three card picker, the order of certain hands (flush, straight and three of a kind) is inverted. The change in ranking is dictated by the frequency of occurrence of those hands. Although the minimum winning card combination in this example is a pair, the invention contemplates other minimum hands, such as a single face card or a high ranking pair, such as a pair of 10's or better. Proportional payouts are typically between 1:1 and 100:1 against the first single part wager, although other payout schemes are contemplated.

In another form of the invention, at least one but fewer than all payouts are proportional to the single part wager. Payout methods may include fixed amounts (regardless of the amount wagered), odds payouts (payment of the amount wagered times the pay table multiple), a percentage of a jackpot or a jackpot amount. The pay table may contain one or a combination of different payout methods, according to the invention.

One method of the invention comprises the player placing a second wager to participate in a game against the dealer, wherein the dealer also preferably receives a hand of at least three cards. Preferably, the dealer is dealt a three card hand. It might be necessary to increase house odds, depending upon the specific game rules selected. This can be easily accomplished by dealing one or more extra cards to the

4

dealer, and allowing the dealer to use his or her best three card combination in an attempt to beat the player hands. The second wager may optional or mandatory. In fact, the first wager may also be optional, or both the first wager and the second wager may be mandatory.

According to the invention, the game may be house banked or player banked. When the game is player banked, the house collects a flat commission on each hand at the beginning of play, or collects a percentage of the amount bet, depending upon the gaming regulations of the particular jurisdiction. For example, California card rooms are only permitted to collect a flat commission on each hand. When the game is player banked, players are given the opportunity to bank the game. The player who agrees to bank a hand takes all wagers lost by each player, and must pay all winning payouts. Players typically have the option to bank the game, but are not required to do so. In the state of California, for example, corporations exist that bank the games. An employee of The corporation will play the game and act as banker on behalf of his employer. According to the present invention, the game may be played as a player banked game, or as a traditional house banked casino game.

In one form of the invention, when the player participates in a three card poker game against the dealer, he is required to place an additional third wager to stay in the game. This third wager may be smaller, larger or equal to the amount wagered against the dealer. Preferably, the player is permitted to view his three card hand prior to deciding whether to make the third wager or fold. In another form of the game, the player is optionally permitted to make the third wager after viewing his cards, but is not required to fold if he elects not to make the third wager.

When the player plays a three card poker game against the dealer, it is sometimes preferable to require the dealer to have a qualifying hand. For example, the rules might require the dealer to have at least a single queen (queen high) in order to qualify to play against the player. In one example of the invention, the second and third bets are a push when the dealer does not qualify. In another example of the invention, the second bet pays 1:1 and the third bet is returned when the dealer does not qualify.

In yet another example of the invention, the dealer is required to reveal at least one card to the players, and the players are also permitted to view their own three card hand prior to deciding whether to place the third bet.

When the player wins the game against the dealer, the dealer or banker typically pays 1:1 odds. In other examples of the invention, higher or lower payouts are made on the second bet. In another form of the invention, an additional bonus payout is made when the player's hand against the dealer is one of a predetermined high ranking arrangements of cards. No additional bet is required, and the bonus payout may be paid against the second or third bet or both bets. An exemplary pay table that pays odds on the second and third bets is shown below:

| Hand | Payout Odds |
|---|---|
| Straight Flush | 5:1 |
| Three of a Kind | 3:1 |
| Straight | 1:1 |

In another form of the invention, the dealer and player hands may be combined to form the best three, four, five or six card bonus hand. In one example of the invention, a

5

bonus amount is paid for the best five card hand made from the dealer's and player's three cards each.

Alternatively, an aspect of the invention may be described as a casino wagering game comprising 1) placing a single first wager to participate in the game; 2) a dealer dealing a hand of three cards to each player who placed a wager; 3) resolving the player hands against a plurality of predetermined winning poker outcomes; and 4) resolving each player's hand against a payout table providing payouts for predetermined ranks of poker-type hands; wherein at least some payouts proportional to the single part wager are available in resolving hands for obtaining a predetermined rank of hand. Predetermined winning poker outcomes that have proportional payouts pay odds. "Odds" in this context means payouts that are proportional to the player's wagers (that is, multiples of the wagers), not progressive payouts, fixed payout amounts or payouts that are part of or an entire pot.

According to an example of the present invention, the above-identified steps defines the entire game play method. In another example of the invention, an additional game segment or segments, optionally including a three card poker game against a dealer are also played with the same hand of cards. The predetermined winning outcomes can include a single face card, a pair or a higher ranking pair, depending upon the theoretical advantage to the house. When at least some of the outcomes pay odds, the odds may pay between 1:1 and 100:1 on the first single part wager. In another example of the invention, the house pays multiple payouts on the first wager. For example, the house may pay two separate payouts of up to 10:1.

Another aspect of the present invention includes a method of playing a casino card game utilizing a standard deck of cards, comprising the steps of: placing a wager to participate in a three card poker game against a dealer; dealing three cards to each player who placed a wager; dealing at least three cards to the dealer; and resolving the hands according to a predetermined hierarchy of poker hands. This game play sequence can be played as a stand-alone game, in combination with a three card hand against a pay table and/or other poker-style games. Preferably, the dealer also deals himself three cards. The players hand must outrank the dealer's hand in order to win the bet. Preferably, the dealer's hand must meet a minimum predetermined rank in order to qualify to play against the player. For example, the dealer must hold a Queen or better. Otherwise the bet is a push.

According to one aspect of the invention, the player is permitted to view his cards. He must then place an additional bet that his hand will beat the dealer hand or he must fold. The invention contemplates allowing the player to stay in the game if he opts not to make the additional bet. In one form of the invention, the player views his own three card hand and at least one dealer card before making the decision on whether or not to place the additional bet.

An optional feature of the invention is paying a bonus payout on either the bet, or the bet and additional bet (both against the dealer's hand) if the player's hand is one of a predetermined number of winning hands. For example, the player may receive a bonus payout when he has a straight flush. Preferably, no additional bet is required to collect on the bonus bet. In other examples of the invention, a bonus bet is required.

Although odds payouts on the bonus bet is a preferred form of the invention, certain high ranking hands may pay a fixed payout, a proportion of a pot or a progressive payout.

It might be necessary to distribute more than three cards to the dealer, and allow the dealer to use the extra card to

6

make the best three card hand against the players. This dealing modification might be necessary to improve the house's odds, depending on the other game rules selected. The second bet and optional bonus bets may be required or optional, depending on house rules.

The present invention is also a method of playing a wagering game, comprising: a player placing at least one wager to participate in the game, wherein the player optionally places a first single part wager that his hand will contain one of a plurality of predetermined winning card combinations, a player optionally placing a second wager that his hand will contain a card combination higher in rank than a rank of a dealer hand; dealing three cards to the player; dealing, at least three cards to the dealer; and resolving the hands according to a predetermined hierarchy of poker hands. According to one aspect of the invention, the player may optionally play the game against the dealer, the game against a pay table or both during each round of play. In other examples of the invention, additional games are combined with one or more of the game segments (against the dealer and/or against a pay table). For example, the game rules could allow the player to place an additional bet on the occurrence of a five card hand against a three card, where the dealer deals the player two additional cards after the three card hand against the dealer and/or against the pay table is complete. Although the specific type of additional game and the number of cards needed is unimportant to the invention, the use of the original three cards with or without adding more cards to play an additional game is contemplated by the invention.

When the three card game against the dealer is played, it is preferable that the dealer's hand meets a minimum value to qualify to play against the players. For example, the rules may require that the dealer hold a Queen or better to qualify. If the dealer's hand does not qualify, the third bet is returned to the player, and the second bet is paid 1:1. Alternatively, all bets made against the dealer are a push.

According to the invention, the game may be a player banked game, or a house banked game. When a player acts as banker, the house takes a flat fee from each player for each round of play, or takes a percentage of the amounts wagered, depending on the jurisdictional and house rules.

When the rules require the player to place a third wager to stay in the game against the dealer, the player is typically permitted to view his three card hand prior to making the third betting decision. In one example of the invention, the dealer turns one or more cards up prior to the player making the third betting decision. The third bet may be mandatory to stay in the game, or may be optional.

The dealer may also act as banker. The player's cards may be dealt unseen or seen. The cards preferably form a standard 52-card deck, although one or more wild cards (such as a joker(s)) may be used. The hand preferably consists of three cards, but in some instances, it might be desirable to deal either the players or the dealer one or more additional cards, and allow the player and/or dealer to discard to arrive at the best three card hand. In another example of the invention, players receive three cards, but have the option to discard one or more cards and have them replaced with additional cards, forming a three card "draw" hand.

A bonus payout may be awarded on the hand against the dealer, with or without requiring an additional bonus wager for certain predetermined poker hands. The bonus payouts may pay a fixed amount, odds, a, percentage of a pot or a progressive jackpot amount. Preferably, bonus amounts are

US 6,698,759 B2

7

paid without requiring a separate bonus wager according to an odds pay table.

In the case of one preferred three card version of the game, hands are preferably ranked as follows, where A=ace, K=king, Q=queen, J=jack and numbers 10 to 2 designate the other cards:

```
Highest:
    BRAG:  Three cards of one suit in sequence
           AKQ highest ranking brag
           KQJ next highest ranking brag
           QJ10 next highest ranking brag, and so on
           until
           32A lowest ranking brag
    TRIPS: Three cards of one Rank
           AAA highest
           KKK next highest ranking trips, and so on,
           until
           222 lowest ranking trips
    RUN:   Three cards of mixed suits in sequence
           AKQ highest ranking
           KQJ next highest ranking, and so on,
           until
           32A lowest ranking
    FLUSH: Three cards of One Suit
           AKJ highest
           AK10 next highest, and so on, until
           532 lowest ranking
    PAIR:  Two cards of Same Rank
           AAK highest ranking
           AAQ next highest ranking, and so on,
           until
           223 lowest ranking
Lowest:
    HIGH CARD (a hand comprising none of the above combinations)
           AKJ highest ranking
           AK10 next highest ranking, and so on,
           until
           532 lowest ranking
Ace is high, but can be low in 3-2-A Sequence.
```

Those skilled in the art will appreciate that various other names may be used for the hands in the illustrative hierarchy set forth herein. Other hierarchy's are contemplated. For example, BRAG may also be known as a royal flush (for AKQ), straight flush or bouncer; TRIPS may also be known as three of a kind or PRILE; and a RUN may also be known as a STRAIGHT.

The payout may be made in accordance with a predetermined scale. For example, one possible payout scheme is as follows:

| | | |
|---|---|---|
| Straight Flush | 40 to 1 | (Range of 25 to 100 to 1) |
| Three-of-a-kind | 30 to 1 | (Range of 10 to 50 to 1) |
| Straight | 6 to 1 | (Range of 4 to 12 to 1) |
| Flush | 4 to 1 | (Range of 3 to 12 to 1) |
| Pair | 1 to 1 | (Range of 1 to 3 to 1) |
| High Card Rank | 0.5 to 1 | (Range of 0.2 to 1 to 1) |

The payouts may be at different rates that are proportional to the original wager, but not necessarily whole number multipliers, such as 2 to 1 or 14 to 5 for a pair. Those skilled in the art will appreciate that the payouts may be varied without departing from the scope of the present invention. In other forms of the invention, at least some of the payouts are fixed in amount regardless of the amount wagered, are a percentage of a jackpot or progressive jackpot amount.

The method may further comprise the step of permitting or requiring a player to place a wager on a fixed or variable extra bonus jackpot, but this is a less preferred embodiment

8

in some instances. For example, when a game is offered in a California card room, players bank the game. In order for players to feel they can afford to bank a particular game, the payout odds must be kept low enough to prevent players from avoiding their turn banking the game. The bonus payouts are therefore preferably eliminated in player-banked versions of the invention. Higher payout odds are acceptable in a more traditional Las Vegas style casino where the house banks the game.

Another embodiment of the present invention comprises the steps of: designating at least one playing card indicia as a wild indicia; placing a single part wager to participate in a casino three-card poker-type game; a dealer dealing a hand consisting of three cards to each player who placed a wager; and playing a three-card poker-type hand wherein said wild indicia is used where present in any of said hands; resolving each player's hand according to predetermined poker rules, wherein at least some payouts proportional to the single part wager are made for obtaining a predetermined winning hand.

In an alternative three-card embodiment of the present invention, each player receives two standard playing cards plus a wild card that the player combines with the standard cards to make a three-card hand. The payout scale and predetermined ranks may be chosen or modified to reflect the increased probability of a high ranking hand being produced. A common wild card or a common card may also be used, again with pay tables modified to reflect the increased potential or at least changed potential for higher ranked hands.

Such wild cards serve to add excitement and create higher hand values. Wild cards could also be designed to be retained permanently by players and if decorated appropriately by an issuing casino or the like would serve the dual purpose of a playing card and a promotional item. Wild cards may be used in this way in conjunction with other forms of card games. Alternatively, the wild card can be printed on the player area of the layout.

The invention also provides game apparatus for use in playing the card-type games of the present invention. For example, the games of the present invention are readily adaptable for play on a board game, computer game, or on a gaming device, such as a video gaming device. For example, one aspect of the present invention comprises an apparatus for playing a card-type game comprising: display element (e.g., board, screen, table cards, play sheet, etc.) for informing at least one player of a hierarchy of a plurality of possible hands and a predetermined plurality of winning card combinations; an area or position for receiving at least one wager selection from a plurality of wagering options by at least one player, wherein the wagering comprises whether a player's hand attains at least one of said predetermined plurality of winning combinations; and a surface or display area for displaying a plurality of indicia of playing cards to form at least one player's three-card hand.

According to a further aspect of the invention there is provided apparatus for use in playing a card game in which all possible hands of cards are ranked according to predetermined poker-type rules, the apparatus comprising at least one player's playing area, each player's playing area comprising a first zone in which a player may place a wager that the player's hand will be greater than a first predetermined rank, and a second zone for display of the player's hand.

The apparatus may also incorporate a chip tray to receive playing chips, the chip tray being placed in a position adjacent to or otherwise convenient to the dealer. The

US 6,698,759 B2

<table>
<tr><td>9</td><td>10</td></tr>
</table>

apparatus may also incorporate an area or receptacle for cards not in play and a shuffler and card shoe. The apparatus may comprise a rigid playing surface of board, plastic or other suitable material or may comprise a cloth or other flexible material defining a playing surface.

In a preferred form, the surface is of generally semi-circular form, the dealer's playing area being located proximate the straight edge of the playing surface or centrally thereof and the players' playing areas being disposed side-by-side in arcuate array adjacent the curved edge of the playing surface.

The various embodiments of the present invention are directed to three-card poker-type games wherein indicia of playing cards are displayed to at least one or more players. As used herein, the phrase "indicia of playing cards" is meant to include actual playing cards, as well as images of playing cards displayed either mechanically, electro-mechanically, electronically or otherwise. For example, it is well within the scope of the present invention to display indicia of playing cards on an actual board game, on a mechanical slot machine, on an electronic gaming device, on another video screen, on video displays at individual player positions (with cards generated by a random selection device, such as a random number generator associated with a set of visual data of card elements) or utilizing another form of image generation such as holography. Similarly, the phrase "indicia of wild cards" as used herein may include jokers from a standard deck of playing cards but may also comprise other indicia that, according to rules of the game, may be used for at least one other value.

FIG. 1 shows a playing surface or table layout 10 on which one or more embodiments of the present invention may be played. Either the game against the dealer alone, a game against the pay table alone or both (either with both segments optional or mandatory) may be played on the exemplary layout. The layout 10 may be marked or placed on any suitable surface such as a gaming table. For example, the layout may be in the form of a layout cloth supported on a. supporting surface. The layout provides a playing area 12 for a plurality of players, for example seven players, and a separate area 14 for the dealer. Each playing area 12 has a marked section or zones 16 for the placing of the first wager by a player as will be described hereinafter.

Each player takes a place at one of the areas 12. The game is played as a round as will be described below. In an example of the invention that includes the player placing a bet against a pay table, each player wagers that the rank of his hand will exceed a minimum predetermined value. On one example, the minimum value is a pair. The game can be played with a standard 52-card deck, or a modified deck, such as a deck with the lower ranking cards (2's, 3's, 4's and 5's) stripped out, for example. At the commencement of the game, each player decides whether to play the particular round by wagering against the "PAIR PLUS" (the first) wager. "PAIR PLUS" is a designation meaning that the poker ranking of the hand must include a pair or better. The gaming chips used in the Pair Plus wager may be of any conventional kind and are available in a number of denominations such as are well known within the art. If the player wishes (alternatively or in addition) to make a wager based on the value of his hand, he places an appropriate token or chip on PAIR PLUS section 16 of his playing area 12. In the present example, the rules of the game provide that payouts will be made according to a displayed payout schedule with "PAIR PLUS" payouts starting at a pair or better. In a preferred three-card version of the game, hands are prefer-

ably ranked according to the following hierarchy, though other rankings may be used:

| | |
|---|---|
| Highest: | |
| BRAG: | Three of one suit in sequence |
| | AKQ highest ranking brag |
| | KQJ next highest ranking brag |
| | QJ10 next highest ranking brag, and so on |
| | until |
| | 32A lowest ranking brag |
| TRIPS: | Three of One Rank |
| | AAA highest |
| | KKK next highest ranking trips, and so on |
| | until |
| | 222 lowest ranking trips |
| RUN: | Three of mixed suits in sequence |
| | AKQ highest ranking, |
| | KQJ next highest ranking, and so on, |
| | until |
| | 32A lowest ranking |
| FLUSH: | Three of One Suit |
| | AKJ highest |
| | AK10 next highest, and so on, until |
| | 532 lowest ranking |
| PAIR: | Two of Same Rank |
| | AAK highest ranking |
| | AAQ next highest ranking, and so on, |
| | until |
| | 223 lowest ranking |
| Lowest: | |
| HIGH CARD (a hand comprising none of the above) | |
| | AKJ highest ranking |
| | AK10 next highest ranking, and so on, |
| | until |
| | 532 lowest ranking |
| ACE is high, but can be low in 3-2-A Sequence | |

The payout schedule may be varied in accordance with rules of the game and/or by the casino. For example, one preferred payout schedule is as follows:

| | |
|---|---|
| Straight Flush | 40 to 1 |
| Three-of-a-kind | 30 to 1 |
| Straight | 6 to 1 |
| Flush | 4 to 1 |
| Pair | 1 to 1 |

Alternatively, in a gaming establishment or jurisdiction where high odds payouts are not favored, a wager can be made solely that the value of the hand will be a pair or greater, King high or greater, Queen high or greater, and the like, and the payout may be, for example, 14 to 5, or whatever other payout is found to be appropriate or desirable.

The display area 22 may include a pay table that appears on the playing surface 12, on a "how to play" card (also known as a "rack card"), or on a plaquard within the view of the players. It is also desirable to position the pay tables proximate the dealer to assist the dealer in resolving the hands. In an alternative arrangement, details of payouts and any extra bonus payouts may be marked on separate displays, such as vertical or supported signs on the table top.

When the above wager is in place on area 16, the dealer preferably shuffles the cards (manually or with an automated shuffling apparatus) and then deals a three-card hand to each player and to himself. The cards may initially be dealt to the players face up or face down, depending upon casino policy.

"PAIR PLUS" wagers are not affected by player inspection. A player playing "PAIR PLUS" only, places his cards in the playing area. If the player reveals a pair or greater to

US 6,698,759 B2

11 12

the dealer, with either the dealer or the player exposing the player's cards, the player will be paid appropriately for the wager. Players who have wagered on the value of the hand (i.e., PAIR PLUS wagers) win if the hand is at least a pair, and are paid by the banker according to the posted scale. These payouts are independent of any other potential play with the cards or continued play with additional cards. This procedure completes a single round of the game, when only the PAIR PLUS bet is played. Play then continues in another round, with players commencing by making additional PAIR PLUS wagers.

According to another aspect of the invention, when the player wishes to make a bet against the dealer, either with or without making the PAIR PLUS bet, he places a wager in the "ANTE" area 18. In the following example, the player is playing only the ANTE bet, and is not participating in the PAIR PLUS game. The player places the ANTE, and then receives three cards. The dealer also deals himself three cards. The player is permitted to view his cards prior to determining whether to make an additional "PLAY" bet in area 20, or fold. In another example of the invention, the player can opt not to make the PLAY wager and remain in the game. In yet another example, the dealer reveals one or more cards to the player, and this information in combination with the knowledge of the player's hand is used to determine whether the PLAY bet should be made.

In a preferred form of the invention, the dealer's hand must meet a minimum ranking in order to qualify to play against the players. In one example, the dealer must have a hand of a Queen or better, otherwise the play wager is returned, and the ante is paid 1:1. In another example, when the dealer does not qualify, both the ANTE and PLAY bets are returned to the player. When the dealer's hand qualifies, the player's hand must beat the dealer's hand in order to win the Ante and Play bets. In a preferred form of the invention, the ante and play bets are paid 1:1 when the player's hand outranks the dealer's hand.

In the examples outlined above, only the PAIR PLUS or the ANTE/PLAY (or ANTE) betting options are permitted from round to round. In other words, the game can be played in a PAIR PLUS only format or in a ANTE/PLAY or ANTE only format. In another example, both betting options are permitted within the same game, and the player has the option of playing one, or the other, or both on any given round. Alternatively, both the PAIR PLUS and ANTE/PLAY (or ANTE) may be required in each round of play. In yet other examples, the PAIR PLUS and ANTE/PLAY or ANTE can be individually or together, in combination with additional games that utilize the three card poker hand to play additional games. For example, the player might make the 50 PAIR PLUS bet and additional bet on a five card stud game. At the conclusion of the PAIR PLUS three card game, the dealer gives the player two more cards to play a hand of five card poker. The number of cards and the specific subsequent game are unimportant to the invention. What is important is that the cards originally dealt be used in a subsequent segment of play. The player can also make an ANTE/BET wager and a five card stud wager, or both the ANTE/BET and PAIR PLUS wager and five card stud wager. As with the example of the invention described above that describes the ANTE/BET wagering embodiment, a bonus payout as shown in pay table 26 may also be provided for awarding the player for a predetermined high ranking poker hand against the dealer.

The novel methods of the present invention may be played utilizing playing cards as illustrated above, or on an electrical or electromechanical device such as a gaming machine. Those skilled in the art will appreciate that suitable controls can be provided for receiving the necessary input and therefore will not be described in detail herein. While the gaming device is intended for play by a single player against the playing device, it is also within the scope of the present invention to provide a multi-unit video format wherein a plurality of players may play against each other and/or against a dealer. Similarly, from the present description, those skilled in the art will appreciate that the novel games of the present invention are readily adaptable for play either within a gaming establishment or at a remote location, such as on a terminal provided in a commercial aircraft or in a hotel room within a casino, for example. Furthermore, the game is readily adaptable to a scratch card format.

From the present description, those skilled in the art will appreciate that various modifications may be made without departure from the scope of the present invention. For example, the naming of the wagers, the naming and/or ranking of any hand, the payout schedule and predetermined winning or losing ranks may be varied in accordance with the requirements of the casino. The table layout may be varied from that described and shown. The rules may be varied, or additional rules imposed, within the scope of the invention.

In particular, there may be introduced a further option of a player wagering on a high odds payout wager or on a fixed or variable jackpot which is paid out in accordance with rules of the casino on a premium hand, or when a high ranked hand is beaten by the dealer. Examples of odds available could be 5000 to 1 or more against a royal flush—ace, king, queen suited or up to 250,000 to 1 or more against consecutive straight flushes.

If the game incorporates a jackpot or a numerical hand value wager, separate designated wagering areas may be provided for these wagers. These may be incorporated at any convenient position on the players' playing areas. The display stand, the wild and promotional card may also be modified or omitted as desired. Whilst the game is described particularly for play in a gaming establishment, it is not limited in this respect and may also be played for example in a domestic environment or in the format of a video game, slot machine, parlor game, lottery-style game or the like.

What is claimed is:

1. A method of playing a wagering game, comprising:
   placing a first single part wager to participate in a casino three-card poker-type game;
   a dealer dealing a hand consisting of three cards to each player who placed a first wager; and resolving each player's three card hand according to a predetermined hierarchy of poker hands.

2. The method of claim 1, wherein a payout is made to the player on the first wager for one of a plurality of predetermined winning outcomes.

3. The method of claim 2, wherein payouts on the first wager for at least one of the plurality of predetermined winning outcomes is made in proportion to an amount wagered.

4. The method of claim 2, wherein the hands are resolved according to a pay table that pays a proportional payout on the first bet for each predetermined winning outcome.

5. The method of claim 4 wherein the proportional payouts include possible payouts of between at least 1 to 1 and 100 to 1 against the single part wager.

6. The method of claim 2, wherein the hands are resolved according to a pay table on the first bet, and wherein the method of payment is selected from the group consisting of

US 6,698,759 B2

13

a fixed payout, a proportional payout, a percentage of a progressive pot or a progressive jackpot amount.

7. The method of claim 2 wherein the predetermined winning outcome is at least one face card.

8. The method of claim 2 wherein the predetermined winning outcome is at least one pair.

9. The method of claim 1 further comprising the player placing a second wager to participate in a game against the dealer, wherein the dealer also receives a hand of at least three cards.

10. The method of claim 9, wherein the second wager and participation in the game against the dealer is optional.

11. The method of claim 9, wherein the second wager and participation in the game against the dealer is mandatory.

12. The method of claim 9, wherein both the first and second wagers are mandatory.

13. The method of claim 9, wherein the game is player banked.

14. The method of claim 9, wherein the player is required to place a third wager after viewing his hand to stay in the game against the dealer.

15. The method of claim 9, wherein the player has an option to place a third wager after viewing his hand, and may stay in the game even if he does not place a third wager.

16. The method of claim 9, wherein the dealer's hand must meet a predetermined minimum rank in order for the player to be paid on the bet against the dealer.

17. The method of claim 16 wherein the predetermined rank of a hand is at least one face card.

18. The method of claim 16 wherein the predetermined rank of a hand is at least one pair.

19. The method of claim 9, wherein the dealer reveals at least one dealer card before the player decides whether to place a third bet against the dealer.

20. The method of claim 1, wherein the game is player banked.

21. A method of playing a live casino table card game with physical cards comprising:

placing a single part wager to participate in a casino wagering three-card poker-type game;

dealing a hand consisting of three cards to each player who placed a single part wager; and

resolving each player's hand according to the rules of poker against a payout table providing payouts for predetermined ranks of poker-type hands;

wherein at least some payouts proportional to the single part wager are available in resolving hands for obtaining a predetermined rank of a hand.

22. The method of claim 21, consisting essentially of:

placing a single part wager to participate in a casino wagering three-card poker-type game;

dealing a hand consisting of three cards to each player who placed a single part wager; and

resolving each player's hand according to the rules of poker against a payout table providing payouts for predetermined ranks of poker-type hands;

wherein at least some payouts proportional to the single part wager are available in resolving hands for obtaining a predetermined rank of a hand.

23. The method of claim 21 wherein the proportional payouts include possible payouts of between at least 1 to 1 and 100 to 1 against the single part wager.

24. The method of claim 23 wherein the proportional payouts include at least two possible payouts of at least 10 to 1.

14

25. A method of playing a casino card game utilizing a standard deck of cards, comprising the steps of:

placing a wager to participate in a three card poker game against a dealer;

dealing three cards to the player;

dealing at least three cards to the dealer; and

resolving the hands according to a predetermined hierarchy of winning poker hands.

26. The method of claim 25, wherein the dealer's hand must meet a minimum predetermined value in order for the player to receive a payout on the wager.

27. The method of claim 25, wherein the player is paid a payout on the wager if a rank of his hand beats a rank of the dealer hand.

28. The method of claim 25, and further comprising the step of the player making a second wager against the dealer's hand or folding.

29. The method of claim 28, wherein the dealer shows the player one of his cards prior to the player making a second wager.

30. The method of claim 28, wherein the dealer's hand must meet a minimum value in order for the player to be paid on either the wager or the second wager.

31. The method of claim 30, wherein the minimum value is a queen or better.

32. The method of claim 25, and further comprising the step of the player optionally making a second wager against the dealer's hand, and staying in the game regardless of whether the second wager is made.

33. The method of claim 25, wherein a bonus payout is made if the player's hand is one of a plurality of predetermined winning hands.

34. The method of claim 33, wherein the bonus payout is selected from the group consisting of a fixed payout, an odds payout, a portion of a jackpot or a jackpot amount.

35. The method of claim 25, wherein the dealer receives three cards.

36. The method of claim 25, and further comprising the step of placing a second wager upon the occurrence of one of a predetermined number of winning poker combinations.

37. The method of claim 36, wherein the second wager is optional.

38. The method of claim 36, wherein the wager and second wagers are mandatory.

39. A method of playing a wagering game, comprising:

a player placing at least one wager to participate in the game, wherein the player optionally places a first single part wager that his hand will contain one of a plurality of predetermined winning card combinations;

a player optionally placing a second wager that his hand will contain a card combination higher in rank than a rank of a dealer hand;

dealing three cards to the player;

dealing at least three cards to the dealer; and

resolving the hands according to a predetermined hierarchy of poker hands.

40. The method of claim 39, wherein the player betting steps are selected from the group consisting of the player placing the first wager only, the player placing the second wager only and the player placing the first and second wager.

41. The method of claim 39, and further comprising the player placing at least one additional bet on an additional wagering game utilizing at least a portion of the player's three card hand.

## US 6,698,759 B2

15

42. The method of claim 41, wherein the additional wagering game is five card poker, and the player receives two additional cards.

43. The method of claim 39, wherein the dealer's three card hand must be of a minimum predetermined ranking in order for the player to win the second wager against the dealer's hand.

44. The method of claim 39, wherein the game is player banked.

45. The method of claim 39, wherein the game is house banked.

16

46. The method of claim 39, wherein the player must make a third wager in order to stay in the game against the dealer's hand.

47. The method of claim 46, wherein the dealer reveals at least one card prior to the player making the third wager.

48. The method of claim 39, wherein the player may optionally make a third wager against the dealer's hand and stay in the game regardless of whether the third wager is made.

* * * * *